708 So.2d 375 (1998)
Olida CHAISSON
v.
CAJUN BAG & SUPPLY CO. and Insurance Company of North America.
No. 97-C-1225.
Supreme Court of Louisiana.
March 4, 1998.
Rehearing Denied April 3, 1998.
*377 Michael B. Miller, Miller & Miller, Crowley, for Applicant.
Kenneth O. Privat, Privat & Regan, Crowley, Charles J. Foret, Briney & Foret, Lafayette, for Respondent.
CALOGERO, Chief Justice.
In this worker's compensation case, the hearing officer awarded the employee indemnity benefits for the period between July 1992 and August 1992, during which time the claimant was unable to work. The hearing officer also awarded the employee attorney fees in the amount of $500, as well as penalties and interest, against the worker's compensation insurer for its failure to timely pay the indemnity benefits due. However, the hearing officer rejected the employee's claims for additional compensation benefits and for supplemental earnings benefits, finding that the employee failed to prove her entitlement to such by a preponderance of the evidence. The court of appeal amended the hearing officer's judgment to increase the award of attorney fees to $1500, but otherwise affirmed. We granted certiorari to determine whether the hearing officer erred in admitting and relying upon hearsay evidence on the issue of the employee's entitlement to additional compensation benefits and to supplemental earnings benefits. We also sought to clarify the law with regard to the admissibility and use of hearsay evidence in worker's compensation proceedings. For the reasons that follow, we affirm the judgment, as amended by the court of appeal.

FACTS & PROCEDURAL HISTORY
In October 1990, plaintiff, Olida Chaisson, was hired by Cajun Bag & Supply Co. (Cajun Bag) to work as a "finisher." A finisher is one who sews fertilizer and sand bags. The position of finisher is performed while seated at a sewing table. However, each finisher is required, as part of her duties, to twist her torso to the left and bend down to pick up the bags from the floorsome of which are up to six feet long and some of which weigh *378 up to twenty-five pounds. The finisher must then place the bag upon the sewing table. After sewing the bag, the machine throws it onto the floor where an inspector retrieves it. Chaisson was required to perform this task 140 times each day to meet her quota. She worked an eight hour shift, with two scheduled fifteen minute breaks and a thirty minute lunch period.
In January 1991, while working, Chaisson turned around to pick up a bag and felt something snap in her back. She got up and walked around, and within five minutes, the numbness she had felt dissipated completely. Chaisson continued working that day, but noted a worsening of the pain in the next couple of days. Chaisson reported the accident to her employer who sent her to Dr. Segura, a general practitioner, for treatment. Thereafter, Dr. Segura referred Chaisson, who was complaining of back and neck pain, to Dr. Budden, an orthopedist.
Chaisson was first examined by Dr. Budden on February 13, 1991, approximately one month after the accident. Dr. Budden opined that her symptoms were the result of a lumbosacral sprain. He prescribed physical therapy. Chaisson had not missed any work because of the accident, and Dr. Budden found no reason to restrict Chaisson's work duties. Chaisson saw Dr. Budden off and on for conservative treatment of her back and neck pain until May 10, 1991, when Dr. Budden discharged her from his care with no restrictions, after Chaisson told him that she was 100 percent improved from her initial visit.
From the January 1991 work incident until Chaisson's discharge by Dr. Budden five months later, Insurance Company of North America (INA), Cajun Bag's worker's compensation insurer during that period, paid for all of Chaisson's medical treatments that related to the January 1991 accident. INA did not pay Chaisson any compensation benefits during this period because Chaisson did not miss any work as a result of the January 1991 accident. On April 30, 1991, Cajun Bag became self insured for worker's compensation.
Chaisson worked from May 1991 until July 1992 without complaining to her employer of neck or back pain. In July 1992, however, Chaisson reported to her employer that she was having back pains similar to those that she had experienced in early 1991. Cajun Bag, then self insured, referred Chaisson back to Dr. Budden and guaranteed payment for her treatment. Dr. Budden saw Chaisson on July 31, 1992. At that time, Chaisson complained of the resumption of low back pain, which had allegedly returned about a month earlier. In a letter sent to Cajun Bag and INA on July 31, 1992, Dr. Budden related that he had not seen Chaisson since he had earlier discharged her from his care on May 10, 1991, after she had "experienced complete resolution with her neck and back pain." Dr. Budden opined that Chaisson's latest onset of symptoms was the probable result of a lumbosacral sprain and that he saw no reason to restrict her work duties at that time. However, Dr. Budden ordered an MRI scan to rule out more significant pathology.
Chaisson returned to Dr. Budden for an examination on August 10, 1992. Chaisson complained of continuous low back pain. Based upon his review of Chaisson's MRI scan, Dr. Budden concluded that her symptoms were the result of degenerative disc herniations of the lumbar spine. He advised Chaisson not to work for a period of two weeks and informed Cajun Bag and INA of his findings in a letter dated that day. Two weeks later, Chaisson returned to Dr. Budden on August 24, 1992, claiming that her condition had worsened. Dr. Budden told her to refrain from working for another two weeks. In a letter to Cajun Bag dated August 24, 1992, Dr. Budden stated that upon Chaisson's next visit in two weeks, he would consider either (1) allowing Chaisson to return to her prior job as a finisher on a trial basis or (2) if that was not feasible, instructing her to find another type of work that would not require those activities that aggravate her lumbar spine.
On September 2, 1992, however, Cajun Bag informed Chaisson that it would no longer guarantee payment for the medical treatment for her back pain. Cajun Bag explained that, based upon its review of Dr. Budden's report, which contained the diagnosis *379 of probable degenerative disc herniations, it concluded that Chaisson's back pains were not work related. Later, Cajun Bag took the position that it was not responsible for any additional payments or benefits because (1) Chaisson's injuries were not work related and (2) if they were work related, then they arose out of the January 1991 accident, during which time INA was its worker's compensation insurer, and INA was, thus, the party responsible for payment. INA, also refusing payment of medicals and other benefits, took the position that (1) Chaisson's injuries were not work related and (2) if they were work related, then they arose out of a second work-related accident that occurred in July 1992, when it no longer insured Cajun Bag. Because neither Cajun Bag nor INA would guarantee the payment of future medical treatment, Chaisson did not return to Dr. Budden for her next scheduled visit, which was to have occurred two weeks after the August 24, 1992 visit.
Chaisson did not see Dr. Budden again until November 13, 1992. On that day, Chaisson reported that she was "no better," but Dr. Budden's notes indicate that her examination was objectively normal. Dr. Budden's notes on this day make no reference to her work abilities. However, in his July 1993 deposition, Dr. Budden testified that had he been asked about job restrictions for Chaisson in November of 1992, he would have advised her to "return to some capacity where she was not required to perform heavy lifting (over 50 lbs.) or tasks requiring constant bending, stooping, squatting, etcetera." Dr. Budden also indicated that she should refrain from "constant repetitive twisting of the torso," but he did recognize that Chaisson could tolerate some twisting movements if the twisting required only shoulder work, such as "grab[bing] something from the right, sew[ing] it, mov[ing] it on the left without having to really twist her torso[.]"
Chaisson concedes that at some point during the period in which Dr. Budden instructed her not to work, Cajun Bag offered her a modified job as an accessory sewer, which was a less strenuous position than finisher. Chaisson refused the job, giving several reasons, including (1) Dr. Budden had not released her to work at that time, (2) she believed that the wages for an accessory sewer would be less than that which she had earned as a finisher, (3) she wanted to be a finisher and was unwilling to work in another position, and (4) she was hurting. At trial, the followingmost tellingcolloquy took place between INA's counsel and Chaisson:
Q. You didn't make any attempt whatsoever to return to work at Cajun Bag even though they told you that they would put you in a position you could do; isn't that correct?
A. Yes, it is.
Q. Why?
A. I was hurting. The job I wanted was finisher. I couldn't do it. I wasn't going to do something else. And I was hurt.
Record at p. 154 (emphasis added).
At trial, Cajun Bag's current human resource manager, Charmaine Martin, testified, over the objections of Chaisson's counsel, about a conversation that allegedly took place between Rebecca Shirley, who was the former human resource manager, and Dr. Budden in August or September of 1992. Although Martin was not a party to that conversation, she testified that Shirley told her that she (Shirley) faxed a copy of the job description for the accessory sewer position to Dr. Budden, who allegedly released Chaisson to work in that position. There exists, however, no documentary evidence to support that this conversation ever took place. Further, neither Shirley nor Dr. Budden testified at trial, and no such conversation was mentioned in Dr. Budden's deposition testimony.
The job description provided by Cajun Bag for the accessory sewer position lists the following as an essential job function: "Repetitive Trunk Movements: Approximately every 24-45 seconds left trunk rotation of 45° to pick up material." A 45° rotation involves only a one-quarter twist to the left, as a full twist to the left would be a 90° rotation. The materials for the accessory sewer position are at table level, in contrast to the materials for the finisher position, which were at floor level. Also, the heaviest lifting required by an accessory sewer is 1 lb., in contrast to the *380 finisher position, which required Chaisson to lift bags that weighed up to 25 lbs. from ground level to table level. In addition, Cajun Bag's human resource manager testified that they were willing to modify the position of accessory sewer further to accommodate the work restrictions of Chaisson, if need be.
In February 1995, Chaisson obtained employment at Comeaux Caps, sewing brims and topstitching on welder's caps. She worked eight hour days, sitting at the sewing table, with two fifteen minute breaks and one thirty minute lunch period, just as she had done at Cajun Bag. She testified that she seldom had to rotate her trunk because the materials were placed in a small crate by her chairat the accessory position at Cajun Bag, the materials are placed on the table, unlike the finisher position, where the materials were placed on the floor. She worked without difficulty at this job until she was laid off some nine months later on October 17, 1995. We note that Chaisson was able to perform this jobthe duties of which were comparable to the accessory sewer position at Cajun Bagdespite her testimony that her back pain had worsened since 1992.
In November 1995, Chaisson was seen by a court-appointed physician, Dr. Mayeux, for an independent medical examination. While Dr. Mayeux's two-page report recognized that Chaisson was "seeking another sedentary job," Dr. Mayeux offered no opinion as to her work abilities.
In November 1992, Chaisson filed a disputed claim for compensation benefits, alleging that she had suffered a work-related totally disabling injury and that Cajun Bag and INA had refused to pay benefits after being notified of her condition. The matter came to trial before a worker's compensation hearing officer on March 5, 1996. On May 1, 1996, the hearing officer rendered judgment, awarding Chaisson indemnity benefits for the period between July 1992 and August 1992, during which time the claimant was unable to work. The hearing officer also awarded Chaisson attorney fees in the amount of $500, as well as penalties and interest, against INA[1] for its failure to timely pay the indemnity benefits which it owed. However, the hearing officer rejected Chaisson's claims for additional compensation benefits and for supplemental earnings benefits, finding that Chaisson had been released to work at a sedentary to light duty position in August 1992 and that Chaisson had been offered such a position by her employer.
Chaisson appealed the decision of the hearing officer, arguing that the hearing officer erred in finding that she was not entitled to benefits after August 1992 and in relying on inadmissible hearsay for the conclusion that Dr. Budden had released Chaisson for any type of work in August 1992. The court of appeal amended the hearing officer's judgment to increase the award of attorney fees to $1500, but otherwise affirmed, finding that even without the hearsay testimony, there was sufficient evidence in the record to support the hearing officer's conclusion that Chaisson was able to perform the modified job that was offered to her.
Chaisson sought this Court's review of the court of appeal's judgment. As noted above, we granted certiorari to determine whether the hearing officer erred in admitting and relying upon hearsay evidence on the issue of the employee's entitlement to additional compensation benefits and to supplemental earnings benefits. We also granted certiorari to clarify the law with regard to the admissibility and use of hearsay evidence in worker's compensation proceedings.

DISCUSSION
Factual findings in worker's compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corp., 97-0688, p. 4 (La.12/02/97), 704 So.2d 1161; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840, p. 7 (La.7/1/97), 696 So.2d 551, 556; Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulan/Weed Eater, *381 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Seal, 97-0688 at p. 4; Banks, 96-2840 at pp. 7-8, 696 So.2d at 556; Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Seal, 97-0688 at p. 5; Banks, 96-2840 at p. 8, 696 So.2d at 556; Stobart, 617 So.2d at 882. "Thus, `if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Seal, 97-0688 at p. 5; Banks, 96-2840 at p. 8, 696 So.2d at 556 (quoting Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
LSA-RS 23:1317[2] mandates that the hearing officer's factual findings be based on "competent evidence." LA.REV.STAT. ANN. 23:1317(A) (West Supp.1997). This legislative mandate is necessary because under the express language of LSA-RS 23:1317, worker's compensation hearing officers are "not bound by the technical rules of evidence." Id. In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. McCORMICK ON EVIDENCE § 352 (4th ed.1992). The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable and supported by competent evidence in the record. Although the Legislature has not defined "competent evidence," in order to give the relaxed evidentiary standard in LSA-RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.
In the instant case, we are first called upon to decide whether hearsay evidence can qualify as competent evidence. "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." LA. CODE EVID. ANN. art. 801(C) (West 1995). The traditional exclusion of hearsay evidence is based upon concerns of unreliability that arise from the inability to test the veracity of the out-of-court declarant. State v. Arnold, 367 So.2d 324, 326 (La.1979). However, as was noted by one administrative law scholar, "[T]he reliability of hearsay ranges from the least to the most reliable. The reliability of non-hearsay also ranges from the least to the most reliable. Therefore the guide should be a judgment about the reliability of particular evidence in a particular circumstance, not the technical hearsay rule with all *382 of its complex exceptions." Kenneth Davis, Hearsay in Administrative Proceedings, 32 GEO. WASH. L.REV. 689, 689 (1964).
Given the relaxed evidentiary standard for worker's compensation proceedings, Professor Davis's approachto evaluate the quality, i.e. reliability, of the hearsay evidence on the particular facts and circumstances of the casemakes sense, especially since most hearsay evidence in administrative hearings is generally reliable documentary evidence, such as correspondence, physician's reports, and the like. McCORMICK ON EVIDENCE § 352 (4th ed.1992). Thus, the general rule in administrative hearings is to allow hearsay evidence and to recognize that the inability to cross-examine the declarant affects the weight that the evidence carries. Id.
Although the lower courts in Louisiana have generally recognized the admissibility of hearsay evidence in worker's compensation proceedings, there has been some confusion as to the weight it should be given, if any, by the hearing officer and by the reviewing court. See Louisiana Hosp. Ass'n Workmen's Comp. Group Self Ins. Fund v. Auguillard, 503 So.2d 1118, 1119 (La.App. 3rd Cir.1987) ("While the state of the law on this issue is unsatisfactory, recent decisions indicate that the mere fact that proffered evidence is hearsay is not sufficient grounds to exclude it in a worker's compensation case."). The Fourth and Fifth Circuits have held that hearsay evidence, within discretionary limits, is admissible in worker's compensation proceedings, but even under the relaxed standard of LSA-RS 23:1317, evidence that is "clearly inadmissible hearsay" should not be considered. Stewart v. Louisiana Plant Serv., 611 So.2d 682, 686 (La.App. 4th Cir. 1992); Garvin v. Perret, 95-217, p. 5 (La. App. 5th Cir. 2/14/96), 670 So.2d 1250, 1254. The Third Circuit has fashioned a somewhat more liberal standard, also finding that hearsay evidence, within discretionary limits, is admissible, but recognizing that the hearing officer is capable of determining the weight to be afforded such testimony. Johnson v. Cajun Enterprises, 293 So.2d 617, 623 (La. App. 3rd Cir.1974). The Second Circuit has held simply that hearsay evidence is admissible because the law provides an exception to the general exclusionary rule for such evidence. Arrington v. Singer Sewing Mach. Co., 16 So.2d 145, 146 (La.App. 2nd Cir.1943). Finally, we recognize that there is a split within the First Circuit with regard to the use of hearsay evidence in worker's compensation proceedings: In Montgomery v. Delta Concrete Prods., 290 So.2d 769, 773 (La.App. 1st Cir.1974), the court held that hearsay testimony, within discretionary limits, is admissible in worker's compensation proceedings and further held that a hearing officer may rely on such evidence where there is sufficient corroboration of the hearsay evidence. However, in Michel v. Department of Public Safety, 341 So.2d 1161, 1165 (La.App. 1st Cir.1976), the court held that although hearsay evidence may be admitted in worker's compensation proceedings, such evidence is incompetent and must be disregarded by a reviewing court.
To give effect to the more relaxed evidentiary standards in LSA-RS 23:1317, we hold that the hearing officer has the discretion to admit hearsay evidence in worker's compensation proceedings. We further hold that such evidence can qualify as "competent evidence," provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon. This determination must be made on a case-by-case basis under the particular facts and circumstances. The reviewing court must evaluate the competency of the evidence under the manifest error standard.
In the instant case, the evidence at issue is, in fact, double hearsaythat is, it is twice removed from the in-court declarant. As discussed earlier, Charmaine Martin, Cajun Bag's current human resource manager, testified about a conversation, to which Martin was not a party, that allegedly took place between Rebecca Shirley, who was the former human resource manager, and Dr. Budden. According to the testimony, Shirley told Martin that she (Shirley) had in August or September of 1992 faxed a copy of the job description for the accessory sewer position to Dr. Budden, who then verbally released Chaisson to work in that position. Neither *383 Shirley nor Dr. Budden testified at trial, and there was no other evidence to corroborate this testimony. This double hearsay evidence is particularly suspect, considering that no such conversation was ever mentioned in Dr. Budden's rather extensive deposition testimony, which was admitted into evidence. Under these circumstances, we hold that the double hearsay evidence at issue in this case is not competent evidence and that the hearing officer was clearly wrong in relying upon such evidence in her written reasons for judgment.
Our inquiry, however, does not end here. The Legislature in fashioning a relaxed evidentiary standard for worker's compensation proceedings envisioned the broad admission of evidence that might fall outside of the technical rules of evidence. Thus, the admission of such evidence is not error. However, to ensure the reliability of the factual findings, the Legislature has mandated that the hearing officer's findings be based on "competent evidence." Such a relaxed evidentiary standard brings the possibility that some incompetent evidence will be admitted. Thus, the Legislature has granted hearing officers the discretion to disregard such admitted, but incompetent evidence in reaching his factual findings. Thus, to give effect to the Legislature's intent, we hold that when a reviewing court finds incompetent evidence in the record, it must apply a manifest error standard of review, unless it is clear from the hearing officer's written or oral reasons for judgment or otherwise evident from the record that the hearing officer actually relied upon the incompetent evidence in arriving at his factual findings. Under the manifest error standard, the hearing officer's factual findings could not be clearly wrong if they were supported by reasonable and competent evidence in the record. However, if it is clear that the hearing officer has relied upon the incompetent evidence, as it is in the instant case,[3] then the reviewing court must conduct a de novo review of the competent record evidence, giving no deference to the hearing officer's factual findings, and render judgment.
After conducting a de novo review of the competent record evidence, we conclude, for the reasons that follow, that Chaisson has failed to prove, by a preponderance of the evidence, that she is entitled to recover any additional indemnity benefits, supplemental earnings benefits, or attorney fees other than those benefits and fees that the court of appeal found due.
First, we address Chaisson's claim for additional temporary total disability benefits. Chaisson claims that she was totally temporarily disabled from August 1992, when Dr. Budden first placed her on no work status, until November 1992. Because Cajun Bag refused to guarantee future treatment beyond Chaisson's August 24, 1992 visit to Dr. Budden, Chaisson did not return for her next scheduled visit. Consequently, there is no written release from Dr. Budden in the record. However, there is sufficient competent evidence in the record of proven facts, inferences, and pertinent circumstances to support the rejection of Chaisson's claim for additional indemnity benefits. For example, although Dr. Budden instructed Chaisson to refrain from work for an additional two weeks on August 24, 1992, in a letter sent to Cajun Bag on that day, Dr. Budden stated that when Chaisson returned in two weeks, he would consider one of two alternatives: (1) allowing Chaisson to return to her prior job as a finisher on a trial basis and (2) if that proved not feasible, instructing her to find another type of work that would not require those activities that aggravate her spine. Nowhere in this August 24, 1992 letter or in his deposition testimony does Dr. Budden indicate that Chaisson would be unable *384 to return to work in any capacity. In fact, as of August 24, 1992, Dr. Budden had not even ruled out the possibility that Chaisson could return to her prior job. Chaisson offers no evidence, other than the fact that Dr. Budden never released her because she never returnedthrough no fault of her ownfor her next scheduled visit, to support her claim that she was totally temporarily disabled from August 1992 until November 1992, when she again visited Dr. Budden. Therefore, although we conclude that Chaisson was temporarily totally disabled for a period of approximately four weeks in August 1992, we also conclude that Chaisson failed to prove, by a preponderance of the evidence, that she was temporarily totally disabled through November 1992. Thus, Chaisson is not entitled to additional indemnity benefits.
Next, we address Chaisson's claim that she is entitled to supplemental earnings benefits (SEBs). Under the provisions of LSA-RS 23:1221(3)(a), an employee is entitled to receive SEBs if he sustains a work-related injury that results in an inability to earn ninety percent (90%) or more of his average pre-injury wage. LA.REV.STAT. ANN. 23:1221(3)(a) (West Supp.1997). The employee bears the initial burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount. Seal, 97-0688 at p. 8; Freeman, 93-1530 at p. 7, 630 So.2d at 739. In the instant case, it is undisputed that Chaisson was earning minimum wage as a finisher, working 40 hours per week, for Cajun Bag. Thus, in order to be eligible for SEBs, Chaisson must prove, by a preponderance of the evidence, that she was unable to earn minimum wage, working at least 36 hours per weekas that would represent 90% of her pre-injury wages. Again, the only evidence that Chaisson offers to meet her burden is the fact that Dr. Budden never released her because she never returnedthrough no fault of her ownfor her next scheduled visit after August 24, 1992. This evidence falls short of satisfying Chaisson's initial burden of proof. Again, we recognize that, as of August 24, 1992, Dr. Budden had not ruled out the possibility that Chaisson could return to her prior job. Further, we note that, at no time, did Dr. Budden indicate that Chaisson would be unable to return to full-time, light duty work.
However, even assuming that Chaisson had met her initial burden of proving entitlement to SEBs (which we do not concede), there is sufficient competent evidence in the record to establish that the employer met its burden of defeating her claim for SEBs. By Chaisson's own admission, Cajun Bag offered to place her "in a position that [she] could do"namely, an accessory sewer position. By all accounts, this accessory sewer position was a much less strenuous position than the finisher position. Although the accessory sewer position requires a 45% left trunk rotation every 24-45 seconds, we find that this requirement of this one-quarter left twist to pick up material at table level falls within the restrictions described by Dr. Budden in his deposition testimony, where he recognized that Chaisson could tolerate some twisting movements if the twisting required only shoulder work, such as "grab[bing] something from the right, sew[ing] it, mov[ing] it on the left without having to really twist her torso[.]" This conclusion is bolstered by the fact that Chaisson was able to perform, without difficulty, substantially similar work at Comeaux Caps for a period of nine months, beginning in February 1995, despite her testimony that her condition had worsened since 1992. Moreover, even assuming that Chaisson was unable to perform the required trunk rotation, the human resource manager testified that Cajun Bag was willing to further modify the job, if need be. This is corroborated by Chaisson's own testimony that she was offered a modified job "that [she] could do." We attach no significance to the fact that the job offer was made during the second two-week period during which Chaisson had been advised not to work. There is no evidence that the offer was rescinded, nor is there any evidence that Chaisson thereafter sought such a modified position by Cajun Bag, but was refused. Considering the evidence outlined above, we find that Chaisson failed to prove entitlement to SEBs.
*385 Finally, we address Chaisson claim for increased attorney fees. The hearing officer awarded Chaisson $500 in attorney fees for INA's failure to timely pay the indemnity benefits duebenefits that cover a period of approximately four weeks, and benefits that we agree Chaisson is due. The court of appeal amended the hearing officer's judgment to increase the award of attorney fees to $1500. Because Chaisson failed to convince this Court that she was entitled to additional indemnity benefits or SEBs, we find that the $1500 award, which covered only the period of approximately four weeks during which INA failed to pay indemnity benefits found due, is supported by the record. Therefore, we find no merit in Chaisson's claim for additional attorney fees.

DECREE
For the reasons given above, we affirm the judgment of the court of appeal.
AFFIRMED.
TRAYLOR, J., not on panel. Rule IV, Part 2, § 3.
VICTORY, J., concurs.
KNOLL, J., concurs in part and dissents in part, for the assigned reasons.
JOHNSON, J., concurs and assigns reasons.
KNOLL, Justice, concurring in part and dissenting in part.
I agree with the majority opinion that the double hearsay evidence at issue in this case was not competent evidence and that the hearing officer was clearly wrong in relying upon such evidence in her reasons for judgment. I additionally agree that this clear error by the hearing officer necessitates a de novo review of the record on the issues of the claimant's entitlement to worker's compensation benefits.
Nevertheless, I disagree with the majority opinion's statement that the relaxed evidentiary standard provided by the legislature for worker's compensation administrative hearings contemplates the admission of incompetent evidence into the record. While I recognize that a hearing officer may allow evidence into the record that might not be admissible under the Louisiana Code of Evidence, I disagree that the hearing officer may allow even incompetent evidence into the record, only to later disregard such evidence when arriving at his or her factual findings. In my view, the hearing officer should evaluate the evidence for competence before admitting it into the record. Any evidence deemed incompetent should not be allowed, and the party seeking to introduce such evidence should be given an opportunity to make a proffer.
The standard laid down by the majority in the instant case is no standard at all. Under the majority's standard, any and all evidence may be admitted into the record, as long as the hearing officer does not clearly rely on incompetent evidence in arriving at his or her findings of fact. Such a standard obviates the need for evidentiary objections. In contrast, I find that incompetent evidence should not be admitted into the record, and that any incompetent evidence actually admitted should be subjected to "harmless error" analysis, regardless of whether such evidence was actually relied on or noted in the hearing officer's findings of fact. This review is similar to the appellate review of a district court judgment when the court has admitted evidence which is inadmissible under the Louisiana Code of Evidence. See Archon v. Union Pacific R.R., Inc., 94-C-2728 (La.6/30/95), 657 So.2d 987.
Turning to the merits of the case, I disagree with the majority's finding that the plaintiff is not entitled to supplemental earnings benefits. After disregarding the inadmissible and incompetent double hearsay evidence, it is clear to me that the claimant has proved her entitlement to SEB. The record evidence clearly reflects that Mrs. Chaisson was injured in the course and scope of her employment. Although Dr. Budden noted that her condition was degenerative, she was asymptomatic prior to her workplace accident on January 17, 1991. Subsequent to the accident, her degenerative condition became acutely and consistently symptomatic. Furthermore, a subsequent MRI revealed two herniated discs at L4-5 and L5-S1. Where, *386 as here, the employee suffered from a pre-existing medical condition, she may still prevail if she proves that the accident "aggravated, accelerated, or combined with the disease or infirmity to produce death or disability for which compensation is claimed." Walton v. Normandy Village Homes Ass'n, Inc. 475 So.2d 320 (La.1985); Peveto v. WHC Contractors, 93-C-1402 (La.1/13/94), 630 So.2d 689. Clearly, Mrs. Chaisson is entitled to the presumption in Walton, that her subsequent injuries were caused by her workplace accident.
Under the provisions of LSA-RS 23:1221(3)(A), an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. LA.REV.STAT. ANN. § 23:1221(3)(a) (West Supp.1997). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman, 93-1530 at p. 7, 630 So.2d at 739. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Seal v. Gaylord Container Corp., 97-C-0688 (La.12/02/97), 704 So.2d 1161.
After reviewing the results of the MRI and after examining Mrs. Chaisson on August 10, 1992, Dr. Budden advised Mrs. Chaisson to refrain from work for two weeks. When Mrs. Chaisson returned for a follow up visit on August 24, 1992, Dr. Budden again advised her not to return to work. Shortly after being apprised of the results of the August 24, 1992, examination, Cajun Bag informed Mrs. Chaisson it would no longer pay for her medical examinations. As a result, Mrs. Chaisson was unable to follow up with Dr. Budden, and she was never subsequently released to return to work by any physician.
In my view, the majority opinion unfairly places the burden for a dispute between Cajun Bag and its insurer, INA, squarely upon the shoulders of Mrs. Chaisson. While Cajun Bag and INA quarreled about coverage for Mrs. Chaisson's injuries, Mrs. Chaisson was unable to receive necessary medical treatment and examination. Cajun Bag and INA should not now reap the benefit of their arbitrary failure to provide a medical examination which they allege would have proved Mrs. Chaisson's ability to work. Put simply, Mrs. Chaisson proved she had a workplace injury and that as of August 24, 1992, she was unable to resume her employment at Cajun Bag. She has proved prima facie entitlement to SEB. Although Dr. Budden had not ruled out Mrs. Chaisson's return to work at either her old job or a light duty position, he wisely withheld any recommendation until his next examination of Mrs. Chaisson. Dr. Budden's speculation that she might try her old job or a new light duty position is insufficient to rebut the non-speculative reports he issued as a result of his most recent examination of Mrs. Chaisson and her MRI film.
I also find Cajun Bag's assertion that it offered Mrs. Chaisson a suitable light duty position unpersuasive. The record indicates that Cajun Bag offered the accessory position to Mrs. Chaisson during the two week period during which she had been instructed by Dr. Budden to refrain from work altogether. Although the majority attaches no significance to this fact, I find that it is crucial. Although pay may have been a factor in her decision to decline the accessory position, Mrs. Chaisson consistently maintained throughout her testimony that the reason that she did not take the accessory position was that she was hurt. The majority opinion fails to take Mrs. Chaisson's acts in the context that she was under doctor's instruction to refrain from work at the time the accessory position was offered. At the time the position was offered, it was not within the physical abilities of Mrs. Chaisson to perform. Plainly, she could not reasonably be expected to accept a position, even one providing an identical wage, while there existed the serious risk of further aggravating her condition.
I would therefore find that Mrs. Chaisson is entitled to supplemental earnings benefits. I find that the majority opinion, instead of *387 liberally construing the Worker's Compensation Act in favor of coverage, has rewarded the employer's arbitrary failure to provide medical examination by presuming that the withheld examination would reveal that the employee could earn 90% of her pre-accident wages. Plainly, this is not a policy that this court should encourage with respect to worker's compensation. For the foregoing reasons, I respectfully concur in part and dissent in part.
JOHNSON, Justice, concurring.
La. R.S. 23:1317 mandates that the hearing officers in worker's compensation cases shall not be bound by technical rules of evidence or procedure, but all findings of fact must be based on competent evidence.
This relaxed standard for the admissibility of evidence would allow the hearing officer to consider as evidence items such as employment records, tax records, or medical records which would ordinarily be excluded as hearsay, and correctly so, since these records could easily be authenticated.
In my view, this relaxed standard would never allow hearing officers to rely upon hearsay statements (in this case double hearsay) and use such statements as the basis for a judgment.
I concur in the result reached by the majority, since plaintiff failed to meet her burden of proof.
NOTES
[1] The award was cast against INA because the hearing officer found that her injuries resulted from the January 1991 accident. The hearing officer further found that INA acted arbitrarily and capriciously in failing to timely pay these indemnity benefits. Because INA did not apply for supervisory writs on these issues, the judgment on these issues is final.
[2] Subsection A of LSA-RS 23:1317 reads as follows:

If an answer has been filed within the delays allowed by law or granted by the hearing officer, or if no judgment has been entered as provided in R.S. 23:1316 at the time for hearing or any adjournment thereof, the hearing officer shall hear the evidence that may be presented by each party. Each party shall have the right to be present at any hearing or to appear through an attorney. The hearing officer shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The hearing officer shall decide the merits of the controversy as equitably, summarily, and simply as may be.
LA.REV.STAT. ANN. 23:1317(A) (West Supp.1997) (emphasis added).
[3] In her written reasons for judgment, the hearing officer stated:

Chaisson was released to work in a sedentary to light duty position in August 1992. Chaisson says there is no written report from a physician releasing her to return to work. Therefore, she contends that the release does not exist. The Court finds Chaisson's contention without merit. The employer testified that it spoke with the treating physician by telephone and he indicated that Chaisson could return to work. The employer's testimony, in this regard, is uncontradicted....
Chaisson v. Cajun Bag & Supply Co., 92-09828 (District 4 5/01/96) (reasons for judgment) (emphasis added).