| ¡.THOMAS F. DALEY, Judge.
Appellant, Charla Harrell, appeals the trial court’s judgment that granted defendant, Meristar Hotel & Resorts, Inc.’s,[1] Motion for Involuntary Dismissal. She argues on appeal that the trial judge erred in granting this Motion because the defendant did not support its Motion with competent evidence as required by LSA-R.S. 23:1317. She further argues that her settlement of two unrelated tort suits against State Farm Mutual Insurance Company and Treasure Chest Casino did not violate LSA-R.S. 23:1101-1103 and should not operate to forfeit her right to further compensation. Charla Harrell also argues that the trial court erred in failing to award her penalties and/or attorney’s fees for violating certain provisions of the I ¡/Workers’ Compensation Act, and finally, the trial court erred in failing to rule on Charla Harrell’s Motion to Compel.
The record shows that Charla Harrell was employed as a room attendant at the Holiday Inn-Select in Kenner, Louisiana. Her duties were to clean the rooms after people checked out. On December 23, 2001, she hurt her shoulder while moving a piece of furniture. The accident was un-witnessed, but she reported it the next day when she was unable to move her arm. She was treated at the emergency room and eventually by Dr. Charles Johnson, an orthopedist that she picked from a list of doctors available through her employer’s workers’ compensation insurance. Dr. Johnson, through examination and an MRI, diagnosed Charla Harrell with a small tear in her rotator cuff, which he surgically repaired on May 3, 2002.
Charla Harrell saw Dr. Johnson a few times over the summer of 2002 and was also prescribed physical therapy. Dr. Johnson last saw Charla Harrell in his office on August 5, 2002, following a fall she sustained at the Treasure Chest Casino. The doctor’s notes from this visit indicate that she had not participated in all the prescribed physical therapy for her shoulder, and additionally she had missed several scheduled office visits. Dr. Johnson recommended a therapy provider who could furnish Charla Harrell transportation. He also scheduled an MRI to see if the fall caused additional injury to her shoulder.
The MRI was performed on August 26, 2002. According to Dr. Johnson’s records, Charla Harrell had an appointment scheduled on August 28, 2002 to go over the MRI results, but she did not show up. By a report dated August 31, 2002, Dr. Johnson discharged Charla Harrell from his *710 care for non-compliance with her treatment program, specifically noting her failure to show up for the August 28, 2002 appointment in his office. His treatment notes show other previous instances of her failure to keep appointments and other acts of noncompliance, such as her failure to wear her sling right after her surgery, and her failure to attend physical | ¿therapy. His notes following his receipt of the results from the MRI indicated that he felt the fall at the casino did not rein-jure Charla Harrell’s shoulder. On September 9, 2002, by a fax report, Dr. Johnson indicated to the insurer that he felt Charla Harrell could return to full duty work, based upon his assessment of the MRI results.
Shortly thereafter, Charla Harrell’s medical and weekly benefits were discontinued. On December 10, 2002, Charla Harrell filed a Disputed Claim for Compensation. On November 10, 2003, defendants filed a Motion to Enforce Forfeiture Provision of LSA-R.S. 23:1202 and to Dismiss with Prejudice, which was denied. Trial was held on December 3, 2003. After Charla Harrell presented her case, defendants moved for an involuntary dismissal on several grounds, which motion was granted in open court. The trial judge stated that he found the claimant’s testimony incredible, but did not state upon which grounds he granted the Involuntary Dismissal. Claimant requested written reasons for judgment, which were never given. On December 17, 2003, Charla Harrell filed a Motion for New Trial, which was denied without hearing on December 18, 2003. This appeal followed.
It appears that the insurer moved for an Involuntary Dismissal on four grounds: first, that Charla Harrell failed to prove a work-related accident because it was un-witnessed and her supporting witnesses’ were contradictory; second, that she violated R.S. 23:1102 when she gave the workers’ compensation carrier no notice that she fell at the Casino, or was in the motor vehicle accident, and further failed to report either settlement; third, that she lied on two 1020 Forms when she reported having no income during a certain time period when she did receive the $1,800.00 settlement from Treasure Chest Casino; and fourth, that Charla Harrell was released to return to work by her treating physician, Dr. Johnson. It is unclear |fiupon which ground the trial court relied, since the only reason he stated for granting the motion was that he found Charla Harrell’s testimony incredible.
On appeal, Charla Harrell first argues that the defendants’ Motion for Involuntary Dismissal was not supported by competent evidence as per LSA-R.S. 23:1317, in as much as Dr. Johnson opined on August 31, 2002 that Charla Harrell could return to work, yet he had not examined her since August 5, 2002, and thus, had no knowledge of her “true” condition. She also argues that Dr. Johnson failed to follow up on whether Charla Harrell had received her physical therapy, and failed to evaluate her after the physical therapy, and failed to communicate to her the results of her August 26, 2002 MRI. Charla Harrell also notes that Dr. Johnson failed to discover why she did not appear in his office for the August 28, 2002 appointment; she suggests that she was not notified of this appointment.
Regarding competent evidence, LSA-R.S. 23:1317(A) states, in pertinent part:
The workers’ compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are prov *711 en by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers’ compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.
This provision has been interpreted to mean evidence may be introduced that does not comply strictly with the technical rules of evidence:
Workers’ compensation judges are not strictly bound by the technical rules of evidence. La. R.S. 23:1317(A). The applicable statute only requires that all findings of fact be based upon “competent evidence.” Id. In other words, the OWC judge has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 10 (La.3/4/98), 708 So.2d 375, 381. The legislative requirement that a hearing officer’s factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and | ^trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Id.
Bolton v. B E & K Const., 2001-0486 (La.App. 1 Cir. 6/21/02), 822 So.2d 29.
Also, generally this provision has been interpreted to mean that workers’ compensation judges have the discretion to allow hearsay evidence, which is otherwise deemed “incompetent evidence,” in certain circumstances. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375.
Our review of Dr. Johnson’s testimony regarding his treatment of Charla Harrell and the facts surrounding his discharge of her shows that this evidence violated no technical rule of evidence, nor was it hearsay evidence. Thus, it was not incompetent evidence within the meaning of LSA-R.S. 23:1317. Charla Harrell’s argument really pertains to the weight or lack thereof she thinks the trial judge should have given it. Her argument is that Dr. Johnson discharged her 26 days after having last seen her, so therefore, his opinion that she was capable of returning to full duty work was not based on her “current” condition, and therefore, his opinion that she was medically ready for discharge should be given little weight. We note that Char-la Harrell did not present any medical evidence to contradict Dr. Johnson’s opinion at trial.
At the time Dr. Johnson first discharged Charla Harrell from his care, it was for non-compliance with her treatment program, which he supported with his notes of her entire course of treatment. He later supplemented that response to the insurance carrier by fax on September 9, 2002, after reviewing her August 26, 2002 MRI, by stating that the MRI did not show a new injury to her shoulder, though it did show residual effects from her surgery, and therefore, he believed that Charla Harrell was medically able to return to full duty work. Dr. Johnson explained that the residual effects that the MRI showed were normal for a postoperative patient at Charla Harrell’s point of recovery, but it did not mean she wasn’t ready, from a medical standpoint, to return to work. Dr. Johnson explained at trial that sometimes releasing patients provided them with the incentive they needed to actually go back to work. His implication was that she might have not felt she was ready to return to work yet, but medically he felt she was ready.
Charla Harrell did not provide the trial court with any medical evidence to counter *712 Dr. Johnson’s opinion that she was discharged initially for non-compliance with her treatment program, but that she was also later discharged because he felt that she was medically ready to return to work. Her argument that Dr. Johnson’s opinion that she was medically ready to be discharged is not competent evidence is without merit.
The testimony of the physical therapist from Century 2, Maria Kay, showed that Charla Harrell failed to keep several appointments, being absent from home when the transportation came to pick her up. She also testified that Charla Harrell was not performing the at-home exercised prescribed by the therapist, and on several visits, was sleepy or did not make the appropriate effort in her treatment.
Charla Harrell argues that Dr. Johnson did not bother to find out if she had received or completed her physical therapy and also did not inquire as to why she did not keep her August 28, 2002 appointment with him. Compliance with her treatment program was Charla Harrell’s responsibility, as it was also her responsibility to keep her doctor’s appointments and attend physical therapy as part of that plan. It was not Dr. Johnson’s responsibility to make sure she did these things. The workers’ compensation system does not impose these paternalistic requirements upon health care providers. It is true that Dr. Johnson did not reevaluate Charla Harrell after she completed her physical therapy in September of R20Q2.[2] Charla Harrell made no requests at the time she completed her physical therapy to see another doctor. The record shows that Charla Harrell did not see another doctor for her shoulder, except for an emergency room visit in September of 2003.
Charla Harrell argues next that she did not violate R.S. 23:1101-1103 for several reasons. First, she argues that the settlement with the Casino was made in December of 2002, four months after defendants terminated her benefits based upon Dr. Johnson’s release. She notes that she did tell Dr. Johnson about the slip and fall at the casino, which showed she had no intention of committing any fraud. (His notes confirm this, as does the fact he ordered the August 26, 2002 MRI to see if there was any re-injury to her shoulder.) She also argues that she notified “Michelle” at Kemper Insurance, the workers’ compensation carrier, of the slip and fall at the Casino, while she was still treating with Dr. Johnson.
Plaintiff also argues that she settled her accident with State Farm on July 31, 2003, well after her termination of benefits and further that this accident was not shown to have aggravated her condition.
There is no indication that these two settlements were the reason the trial court granted the involuntary dismissal. We decline to find that Charla Harrell violated R.S. 23:1101-1103 by accepting these two settlements. She did notify Dr. Johnson of the incident and also attempted to notify “Michelle” at Kemper. Defendant argues that it was fraudulent for Charla Harrell to claim that the casino incident injured her shoulder by accepting the settlement, when the MRI showed no new injury. The records from that incident show that *713 her shoulder was swollen after she fell at the casino, so while there may have been no new internal injury or 19aggravation to the rotator cuff as shown in the subsequent MRI, some objective though very temporary injury was noted. Defendant did pay for the MRI that Dr. Johnson ordered as a result of the slip and fall, but since Charla Harrell was discharged from his care three days later, did not pay for any treatment allegedly necessitated by the casino incident. While she received physical therapy following the casino incident, it was the therapy originally prescribed for the shoulder surgery and the record does not indicate that any additional therapy was requested or required because of the casino incident. The trial court did not order Charla Harrell to pay restitution of the MRI costs, and the defendant did not appeal that issue.
Charla Harrell argues next that the trial court failed to award her penalties and/or attorney’s fees for several alleged violations of the Act. First, she argues that defendant failed to timely respond to her requests for all medical reports, and alleges that there were some reports of Dr. Johnson to the insurance company that she never received. Defense counsel did not address this Assignment of Error in its brief. Defense counsel admitted at trial that he did not timely respond to several of these requests, but that she eventually received all the requested information that he had in his file. Charla Harrell fails, on appeal, to show how she was prejudiced by the defense’s admittedly untimely response.
Next, Charla Harrell argues that defendants terminated her benefits knowing that the full duty release by Dr. Johnson was inconsistent with the other medical information it had from Dr. Johnson, the MRI, and the physical therapists, thus subjecting defendants to reasonable attorney’s fees under LSA-R.S. 23:1201.2. As outlined previously in this opinion, Dr. . Johnson testified live at trial that Charla Harrell was medically able to return to work, and this evidence was not rebutted by Charla Harrell with any other medical evidence. Absent some medical testimony |10refuting Dr. Johnson’s release to return to work we can not conclude that the trial judge erred.
Charla Harrell argues that she has requested additional medical care and physical therapy and defendants have refused to furnish the same. Defendants, however, are not obligated to furnish further care when Charla Harrell’s treating physician has released her to full-duty work and she has not rebutted those findings.
Charla Harrell also argues that on March 13, 2003, in an interrogatory (No. 13), she chose Dr. John B. Cazale IV as her treating physician, but defendant has never recognized this choice and has ignored this, which subjects defendant to a $2,000.00 penalty and reasonable attorney’s fees under R.S. 23:1203 and 1201. We note that Dr. Johnson was Charla Harrell’s treating physician of choice. The record shows clearly that Charla Harrell selected him herself from a list of physicians available under the available insurance. Charla Harrell received what she was entitled to under the laws of workers’ compensation.
Charla Harrell argues next that the trial court erred in failing to render rulings on her Motion to Compel. This relates to defense counsel’s admittedly untimely response to certain discovery requests, as noted above. By the time of the hearing, though, defense counsel argued that he had responded to plaintiffs discovery requests with all the requested information that he had access to. Charla Har *714 rell fails to show that she was ultimately prejudiced in any way for this admittedly untimely response.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
CANNELLA, J., dissents with reasons.

. Defendants also include Meristar’s workers’ compensation insurer, American Protection Insurance Company, and will be referred to collectively as "defendant.”

. The testimony of the physical therapist at trial shows that Harrell had several no-shows at physical therapy or was not available when her ride came to get her, and additionally had at least one appointment where she was falling asleep during therapy or not making an effort. The therapist did testify that two of the three therapy goals were close to being met by the time therapy ended: Harrell partially increased her range of motion and strength, but progress was not made in her level of pain, which the therapist noted was incapable of being measured objectively, unlike the first two goals.