STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

09-347

ALBERT JOURNET, JR.

VERSUS

GREENE'S ENERGY GROUP AND LOUISIANA
WORKERS' COMPENSATION CORPORATION

************
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION
PARISH OF LAFAYETTE, NO. 07-04005, DIST. 04
SHARON M. MORROW, WORKERS' COMPENSATION JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of John D. Saunders, Jimmie C. Peters, and James T. Genovese,
Judges.

AFFIRMED.

Will H. Green
Johnson, Stiltner & Rahman
2237 S. Acadian Thruway
Post Office Box 98001
Baton Rouge, Louisiana 70898-8001
(225) 231-0522
COUNSEL FOR DEFENDANTS/APPELLANTS:
    Greene's Energy Group and
    Louisiana Workers' Compensation Corporation


Christ Beaner
Alex & Associates, Inc.
227 Rees Street
Post Office Box 126
Breaux Bridge, Louisiana 70517
(337) 332-1180
COUNSEL FOR PLAINTIFF/APPELLEE:
    Albert Journet, Jr.

**GENOVESE, Judge.**

In this workers' compensation case, Defendants, Greene's Energy Group (GEG) and its insurer, Louisiana Workers' Compensation Corporation (LWCC), are appealing the September 24, 2008 judgment of the Workers' Compensation Judge (WCJ) awarding Plaintiff, Albert Journet, Jr., temporary total disability (TTD) benefits and assessing them with penalties and attorney fees. For the following reasons, we affirm the judgment of the WCJ.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Journet sustained an on-the-job knee injury on May 23, 2006, while working for GEG near New Orleans, Louisiana. The next day, Mr. Journet sought treatment at University Medical Center in Lafayette, Louisiana. On June 12, 2006, Mr. Journet filed an "Employers First Report of Injury or Illness" officially reporting his accident to GEG.

On May 23, 2007, Mr. Journet filed a Disputed Claim for Compensation, commonly referred to as a 1008, asserting "[n]o wage benefits have been paid" and "[n]o medical treatment has been authorized[.]" An Answer and General Denial was filed by GEG on July 2, 2007.

This matter went to trial on July 29, 2008. Counsel for GEG stipulated as to both the occurrence of Mr. Journet's accident as well as to the amount of Mr. Journet's average weekly wage and compensation rate.

In her oral reasons for judgment, the WCJ ruled in favor of Mr. Journet declaring, in relevant part:

> Medical records do show consistent with Mr. and Mrs. Journet's testimony that on the 24th, they went to UMC; the 25th Christus Spohn[]. And there was a disability slip given at Christus Spohn, "Off of work for three days. Recheck by family or company doctor or

preferred doctor, prior to return recommended." Also there was [sic] objective indications -- objective signs of injury, being the right knee contusion that was noted in the records. The complaints arose immediately after the accident and have continued during the course of the treatment. That's documented in the medical records and through date from the testimony of Mr. and Mrs. Journet.

The MRI taken or performed a year later, showed fluid on the knee, degeneration or strain at the ACL, possibly a partial tear and then some problems with chondramalacia [sic]. Again, objective findings. Mr. Journet testified there was no intervening incident.

Given the occurrence of the accident, the immediate complaints, the MRI results a year later with no intervening event, it appears to be pretty clear that there were objective signs of injury. There was an injury to the knee that was caused by the accident. He was taken off work. Recommended return visit to the doctor before returning to work. His medical bills were not picked up. I'm still not sure why, but certainly I am not going to penalize him for failing to get a clearer work picture.

The WCJ awarded Mr. Journet workers' compensation benefits of $426.42 per week from the date of the accident until further orders of the court, all reasonable and necessary medical expenses, $4,000.00 in penalties, and $7,000.00 in attorney fees. A judgment to this effect was signed on September 24, 2008. Defendants, GEG and LWCC, have appealed this judgment.

## ASSIGNMENTS OF ERROR

Defendants assert that the WCJ erred: (1) "by allowing uncertified medical records into evidence and relying on them as prima facie evidence[;]" (2) "in awarding temporary, total disability benefits to [Mr. Journet;] and (3) "in awarding [Mr. Journet] penalties and attorney[] fees[.]"

2

Appellate review of workers' compensation cases was set forth by our supreme court as follows:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.

*Dean v. Southmark Const.*, 03-1051, p. 7 (La. 7/6/04), 879 So.2d 112, 117 (citations omitted).

***Medical Records***

In brief, Defendants allege that "[a]t trial, the WCJ overruled an objection by Appellant to Appellee's introduction into evidence of uncertified medical records from Christus Spohn and Dr. Donald Mulder (Exhibit B, C). These uncertified records were relied heavily upon by the WCJ in her ruling." Defendants contend that without Exhibits B and C, there is no proof of Mr. Journet's disability in the record.

In brief, Mr. Journet contends that GEG "did not object specially [sic] to Exhibits B and C which comprise Christus Spohn and Dr. Donald L. Mulder, respectively, which is the basis for [Defendants'] appeal herein." Further, Mr. Journet argues that the provisions of La.R.S. 23:1317 grant the WCJ great discretion to admit evidence, particularly when said evidence is corroborated by testimony.

From our review of the record, it is clear that counsel for GEG and LWCC is mistaken in his contention that he objected to the introduction of Exhibit B, the

medical records from Christus Spohn Hospital in Alice, Texas, as evidenced in the

transcript of the July 29, 2008 trial as follows:

JUDGE MORROW:

For the record, UMC records identified as Exhibit Plaintiff's A.

Christus Spohn as Plaintiff's Exhibit B. Dr. Mulder, Plaintiff's Exhibit C. First Report of Injury, 1007, Plaintiff['s Exhibit] D. Metropolitan Health Group, Plaintiff['s] Exhibit E. RAMIK [sic] Medical Imaging, identified -- it's blank but I believe that is F. Is that correct, Mr. Beaner?

MR. BEANER [Attorney for Mr. Journet]:

That's correct, Your Honor.

JUDGE MORROW:

Thank you.

Mr. Travis, any objections?

MR. TRAVIS [Attorney for Defendants]:

No. The UMC records are certified, and Exhibit B is certified. So I can't object to those. Well, RAMIK [sic], also.

Exhibit E, I'm not sure how that's marked. I'll object to the uncertified records.

JUDGE MORROW:

Well, considering that your client has been sitting doing nothing for two years on this case, I'm not going to sustain that objection. So overruled. Plaintiff's Exhibit A through F are received.

Contrary to Defendants' assertions on appeal, counsel for GEG and LWCC

accepted Exhibit B into evidence and only objected to Exhibit C generally. We find

that while Defendants' nonspecific objection to "uncertified records" may apply to

Exhibit C,[1] the record does not support Defendants' assertions that the WCJ "relied

---

[1]Exhibit C consists of two pages. The first page is an invoice evidencing services rendered by Dr. Mulder to Mr. Journet on June 7, 2006, and the second page is Dr. Mulder's progress notes

heavily upon" the content of Exhibit C. The WCJ's oral reasons for judgment indicate that she relied both upon the testimony of Mr. and Mrs. Journet as well as the findings of an MRI performed on April 7, 2007. These findings are evidenced by Exhibit F, the certified records from RAMIC Medical Imaging.

Louisiana Revised Statutes 23:1317(A) provides, in pertinent part:

The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based upon competent evidence and all compensation payments provided for in this Chapter shall mean and be defined to be for only such injuries as are proven by competent evidence, or for which there are or have been objective conditions or symptoms proven, not within the physical or mental control of the injured employee himself. The workers' compensation judge shall decide the merits of the controversy as equitably, summarily, and simply as may be.

In *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, pp. 9-10 (La. 3/4/98), 708 So.2d 375, 381 (footnote omitted, emphasis in original), our supreme court discussed the relaxed rules of evidence applicable to workers' compensation proceedings as follows:

[Louisiana Revised Statutes] 23:1317 mandates that the hearing officer's factual findings be based on "competent evidence." LA.REV.STAT. ANN. 23:1317(A) (West Supp.1997). This legislative mandate is necessary because under the express language of LSA-RS 23:1317, worker[s'] compensation hearing officers are "not bound by the technical rules of evidence." *Id*. In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. MCCORMICK ON EVIDENCE § 352 (4th ed.1992). The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable *and supported by competent evidence in the record*. Although the Legislature has not

_____

from said appointment.

5

defined "competent evidence," in order to give the relaxed evidentiary standard in LSA-RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.

In the instant case, we find that the record reveals that the contents of Exhibits B and C were corroborated through the trial testimony of both Mr. and Mrs. Journet. "Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong." *Jeanise v. Cannon*, 04-1049, pp. 5-6 (La.App. 3 Cir. 2/23/05), 895 So.2d 651, 659, *writs denied*, 05-785, 05-788 (La. 5/13/05), 902 So.2d 1021 (quoting *Seal v. Gaylord Container Corp.*, 97-688, pp. 4-5 (La. 12/2/97), 704 So.2d 1161, 1164).

Contrary to the arguments of GEG and LWCC, we find that the WCJ was correct in her finding that there is sufficient proof of Mr. Journet's disability in the record of these proceedings. Therefore, we find no merit to Defendants' first assignment of error.

***Temporary Total Disability Benefits***

Louisiana Revised Statutes 23:1221(1)(c) sets forth the criteria for awarding TTD benefits as follows, in pertinent part:

> [C]ompensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.

GEG and LWCC argue that Mr. Journet failed to prove by clear and convincing evidence that he is physically unable to engage in any type of employment or self-

employment due to his injury. In brief, GEG and LWCC assert:

> Even if the uncertified medical records should be allowed as evidence, Appellee's testimony at trial, coupled with the medical evidence submitted to the judge, failed to prove by clear and convincing evidence that he is physically unable to engage in any type of employment or self-employment due to his injury.

Considering Defendants' stipulation to the occurrence of Mr. Journet's accident on May 23, 2006, and our review of the testimony and the exhibits, we find no error in the WCJ's award of TTD benefits to Mr. Journet. Of particular note is Exhibit E, the certified records from Metropolitan Health Group and its physician, Dr. Keith R. Mack. These records evidence the fact that Mr. Journet saw Dr. Mack from October 10, 2006, through April 3, 2007. During this period, Mr. Journet's complaints of knee pain continued.

At trial, GEG and LWCC did not offer any evidence to controvert Mr. Journet's claims of disability. Instead, it offered the testimony of its employees, Leon Champion and Steve Langlinais, seemingly to contest the occurrence of an accident—an issue already resolved by stipulation.

Mr. Champion, the Safety Representative for GEG, testified that the first time that he heard of Mr. Journet's accident was on June 12, 2006. According to Mr. Champion, he saw Mr. Journet limping a few days after May 26, 2006, and when he asked Mr. Journet what happened, Mr. Journet told him that he had hurt his knee while helping someone move.

Mr. Langlinais, the Corporate Health, Safety, Environment Manager for GEG, testified that he also found out about Mr. Journet's accident on June 12, 2006. Mr. Langlinais also gave confusing testimony about vaguely remembering the Corps of Engineers in New Orleans calling to inquire about Mr. Journet after his accident.

7

According to Mr. Langlinais, there was no report of accident or injury yet filed; therefore, he could not tell them anything because he had no knowledge of an accident having occurred.

Contrary to the arguments of GEG and LWCC, this testimony does not reasonably controvert Mr. Journet's evidence that he is physically unable to engage in any type of employment due to his injury and, thus, is entitled to TTD benefits. Therefore, we find no merit to Defendants' second assignment of error.

### *Penalties and Attorney Fees*

Louisiana Revised Statutes 23:1201 provides, in pertinent part:

> E. Medical benefits payable under this Chapter shall be paid within sixty days after the employer or insurer receives written notice thereof.

> F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars. An award of penalties and attorney fees at any hearing on the merits shall be res judicata as to any and all claims for which penalties may be imposed under this Section which precedes the date of the hearing. Penalties shall be assessed in the following manner:

> . . . .

> (2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

GEG and LWCC assert that the evidence does not support the WCJ's awards

8

of penalties and attorney fees. They rely upon Exhibit B, the medical records from Mr. Journet's visit to the emergency room at Christus Spohn Hospital in Alice, Texas, on May 25, 2006. GEG and LWCC argue in brief:

> In this case, Appellee was released to return to work on "Monday 29, 2006[]" (Exhibit "B"). This medical report was the only disability status ever given to Appellee. None of Appellee's treating physicians disabled him, took him off work, or gave him any work restrictions. LWCC made a good faith determination based on all available medical evidence that claimant was not temporarily and totally disabled from performing some type of work. As such, Appellant should not be penalized for making a good faith determination based on just cause.

While we find it ironic that GEG and LWCC offer Exhibit B in support of their argument, the same exhibit they contend was erroneously accepted into evidence by the WCJ due to the exhibit's lack of certification, we do not find error in the WCJ's assessment of penalties and attorney fees. We find Defendants' argument that it relied upon Exhibit B to justify denying payment of TTD benefits to Mr. Journet self-serving. GEG and LWCC cannot have it both ways. They cannot argue that Exhibit B is uncertified and, therefore, inadmissible and insufficient evidence to prove Mr. Journet's disability yet, on the other hand, argue that Exhibit B is admissible and sufficient evidence for them to rely upon to deny Mr. Journet TTD benefits. Therefore, we find no merit to Defendants' third assignment of error.

Finally, in his brief, Mr. Journet asserts that he is "entitled to . . . an increase in [the] award for attorney[] fees because of additional services rendered on this appeal." However, we have neither an appeal nor an answer to Defendants' appeal on behalf of Mr. Journet. Therefore, Mr. Journet's request is not properly before this court and, thus, is not considered. *See* La.Code Civ.P. art. 2133; *Fluitt v. Christus Health Cent. La.*, 05-945 (La.App. 3 Cir. 6/28/06), 935 So.2d 369, *writ denied*, 06-2302 (La. 12/8/06), 943 So. 2d 1094.

**DECREE**

Accordingly, for the reasons stated above, the judgment of the workers' compensation judge is affirmed. Costs of this appeal are assessed to Appellants/Defendants, Greene's Energy Group and Louisiana Workers' Compensation Corporation.

**AFFIRMED.**