| JAMES L. CANNELLA, Judge.
The Defendant, Regina Dubose (Du-bose), appeals a workers’ compensation judgment in favor of the Plaintiff, Cenacle Retreat Home (Cenacle), which denied her claim for benefits. We affirm.
Dubose was hired on August 3, 2001 on a three-month probationary basis as an office manager to run the Cenacle’s mass and prayer card business located at the retreat home in Metairie, Louisiana. Du-bose had pre-existing pain in her shoulders and arms from a 1996 automobile accident and subsequent surgeries to relieve thoracic outlet syndrome (TOS). She was still being treated by a chiropractor for residual problems when she was hired. This was known by Cenacle and Dubose was cautioned about lifting. Dubose had also been involved in an automobile accident on April 11, 2001, four months prior to her employment with Cenacle.
In November of 2001, Dubose made a claim for injuries which she allegedly sustained in two separate job-related accidents, occurring in October |3and November of 2001. She claimed that the accidents caused her to suffer pain around her left collarbone area, left shoulder, left arm, left hand fingers and legs. At the end of December of 2001 she was terminated for failing to perform her duties and for her hostility to her supervisor, Sister Patricia Agnes Pafco. On February 21, 2002, Dubose was involved in another automobile accident when a car backed into her. She claimed an aggravation to her neck, back and left arm injuries.
*411 Dubose was initially paid indemnity and medical benefits. Cenacle terminated the benefits after discovery of her medical records and based on a vocational evaluation performed by Lynn Castro of Younger & Associates, showing the availability of jobs. Cenacle concluded that Dubose was not disabled from a work-related injury. On July 10, 2002, Cenacle and its claims administrator, Summit-Claims Center (Summit), filed a Disputed Claim for Workers’ Compensation, contesting Dubose’s entitlement to disability or medical benefits. Du-bose responded with a request for reinstatement of benefits and for penalties and attorneys’ fees.
Trial of the matter took place on December 17, 2003. On February 4, 2004, the workers’ compensation judge issued a-judgment in Cenacle’s favor, finding that Dubose had failed to prove a work-related accident and causation. He further found that Dubose willfully misrepresented certain facts in order to receive workers’ compensation benefits, thereby violating La. R.S.23:1208 and forfeiting any rights to said benefits. Dubose’s claims for penalties and attorney’s fees were denied.
On appeal, Dubose asserts that the workers’ compensation judge erred in ."failing to find a compensable accident, in failing to find causation, and in failing to award penalties and attorney’s fees. Du-bose further asserts that the trial judge |4erred in finding that she forfeited her right to benefits because Cenacle failed to plead a violation of La.R.S. 23:1208 and because any inconsistencies in testimony and alleged misrepresentations do not rise to the level of willfulness, which is required under R.S. 23:1208.
The manifest error standard of review applies to factual findings in a workers’ compensation case. Chaisson v. Cajun Bag & Supply Co., 97-1225, p. 13 (La.3/4/98), 708 So.2d 375, 380; Hookfin v. Advantage Nursing Services, Inc., 03-340, p. 3 (La.App. 5th Cir.10/15/03), 860 So.2d 57, 59, writ denied, 03-3136 (La.1/30/04), 865 So.2d 85. In applying the manifest error-clearly wrong standard, we must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Chaisson, 97-1225 at 13, 708 So.2d at 380; Hookfin, 03-340 at 3, 860 So.2d at 59. When there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though we may feel that our own evaluations and inferences are as reasonable. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993); Ho-okfin, 03-340 at 3,-860 So.2d at 59. Thus, if there are two permissible views of the evidence, a factfinder’s choice of them can never be manifestly erroneous or clearly wrong. Chaisson, 97-1225 at 14, 708 So.2d at 381; Hookfin, 03-340 at 4, 860 So.2d at 59. Accordingly, if the factfin-der’s findings are reasonable in light of the record, the appellate court may not reverse or modify the judgment. Chaisson, 97-1225 at 4, 708 So.2d at 381; Hookfin, 03-340 at 4, 860 So.2d at 59.
WORK RELATED INJURY
La.R.S. 23:1021(1) defines an accident as “an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an l.finjury which is more than simply a gradual deterioration or progressive degeneration.”
Sister Pafco initially interviewed Dubose for a clerical job, but was so impressed with her resume that she offered her the job of office manager instead. • As such, Dubose would be responsible for supervising several employees, scheduling work days, collecting money and credit card *412 payments from customers, getting the collections to the finance office each day and supervising other daily duties. Sister Paf-co would be Dubose’s supervisor and would be working with her. During the interview, a discussion arose about Du-bose’s medical history when Sister Pafco, who had severe back problems, attempted to retrieve a piece of paper that fell to the floor. Dubose disclosed that she had been in an automobile accident in 1996 and had suffered a variety of injuries. She was ultimately diagnosed with TOS, a condition that caused pain in her back and upper extremities, including her neck, left shoulder and left arm. As a result, Dubose underwent right and left rib resection surgeries in January and February of 1998. Because Sister Pafco had a back problem and understood the requirements of the job, she was not concerned about Dubose’s ability to perform the work and hired her. Dubose was placed on three months probation.
In mid October, Dubose had to leave suddenly for a family emergency in Washington, D.C. She returned to work early the following week.[1] Later in that week, during a meeting, Sister Pafco noticed Du-bose rubbing her neck. She told Sister Pafco that she had hurt her shoulder at work earlier in the week when she tried to straighten a box of computer labels. Du-bose later claimed that she had been kneeling in front of the printer table with her left side perpendicular to a [¿nearby wall, attempting to straighten a box of computer paper. Suddenly, one side of the box broke and she toppled sideways striking her shoulder on the wall. Dubose claimed that the table was 1 to 2 feet from the wall. Sister Pafco said it was only inches away. Sister Pafco could not find any accident report forms, so she instructed Dubose to get one from the administrator and fill it out. However, Dubose did not complete a report. That alleged accident was not mentioned again until the second incident in November. Dubose testified that she did not report the incident when it happened because she did not feel any pain at the time. She claimed that her symptoms arose later that evening. She did not take any further action because she did not feel the incident was significant.
On November 3, 2001, Sister Pafco and the administrator at Cenacle conducted a job performance interview with Dubose. They informed her that her work was deficient in several areas. However, they wanted to give her a chance to correct the problems, so they extended the probationary period for another month.
On Tuesday, November 6, 2001, the second incident occurred when Dubose was trying to assist Sister Pafco. Sister Pafco testified that she was attempting to pick up a ream of computer paper from a box on the floor when Dubose came in and tried to help. Dubose took one side of the ream with one hand and lifted. Sister Pafco thought that Dubose had a good hold on the paper and let go. As she did, Dubose reached for the ream of paper with her other hand to keep it from falling. According to Sister Pafco, Dubose grimaced or made a face. Sister Pafco expressed concern. Dubose responded that she had a chiropractic appointment that evening and the doctor could handle it. *413 Dubose claims that she did not feel bad at the time, but later in the evening her left shoulder started hurting. She said that the pain radiated to her upper arm, fingers |7and leg. Nevertheless, she went to work the next day without complaint. Again, neither she nor Sister Pafco filed an accident report. Dubose explained that she thought the pain would subside. When it did not, on Saturday, November 10, 2001, she went to the emergency room. She was told that she had a pinched nerve. After that, Dubose asked to obtain workers’ compensation benefits to pay the medical bills. She did not lose any days of work due to either incident.
On November 13, 2001, Dubose submitted accident and first report of injury reports for both accidents. She had to re-do the reports twice because Sister Pafco discovered that Dubose was not at work on the date that she put down for the first incident, October 17, 2001. Dubose testified that she made the mistake because, although she wanted time to call her mother or chiropractor, Sister Pafco pressured her to submit the report by the end of that day. She rewrote the reports. When she put down the wrong date on the First Report of Injury form again, she was asked to redo it. Sister Pafco said that Dubose became angry and called the Office of Workers’ Compensation and was told that she could white-out the wrong date, instead of rewriting the entire report. Dubose explained that she is left-handed and because the pain was in her left arm and hand, it hurt to write the reports. On November 28, 2001, pursuant to Sister Pafco’s request, she submitted a “time-off’ request sheet for the October emergency trip, which had not been done at the time she requested the time off. On November 29, 2001, she submitted the last version of the First Report of Injury forms to Sister Pafco.
On the report for the October incident, Dubose claimed that the fall caused a pinched nerve from the left shoulder to the left side of the neck, causing pain in her left side collar area, left shoulder, left arm, left chest area hand and fingers. In the report for the November incident, she alleged that the incident | ¿‘heightened” the level of discomfort in her left arm, shoulder and hand, and that it became more intense on November 9 and 10, 2001. She again stated that the emergency room doctor told her that it was caused by a pinched nerve.
On November 30, 2001, the employment of Dubose was terminated. According to Sister Pafco, she was terminated before the extended probationary month ended because, after she sought compensation benefits, she became hostile to Sister Paf-co and refused to talk to her. Sister Pafco stated that Dubose’s hostility and anger were affecting the morale of the entire office. Furthermore, Dubose was still not performing her job properly and diligently. As an example, after Dubose left, Sister Pafco discovered that numerous deposits had not been brought to the financial office, causing complaints from the financial officer and the customers who were being billed for late payments.

1. Accident

Based on the evidence, Dubose proved the occurrence of two work-related accidents. Both Sister Pafco and Dubose testified that Dubose told Sister Pafco a few days after the incident on October 22, 2001 that she hurt herself attempting to straighten a box of computer labels. The evidence further showed that Dubose was not concerned about it. Although there was some confusion about the date of the October incident, the evidence indicates that the event occurred. Furthermore, the November 6, 2001 incident was wit *414 nessed by Sister Pafco. Afterwards, neither she nor Dubose thought the incident significant because neither thought it important enough to file an accident report. Cenacle and the trial judge suspected that Dubose’s motive in reporting the two accidents mid-November was because she was given a poor work performance evaluation on November 3, 2001. However, Dubose did report the October incident to Sister Pafco and the second was witnessed by Sister Pafco. Thus, Dubose proved two | flwork-related “accidents.” The next question is whether the accidents caused com-pensable injury.

2. Causation

Sister Pafco testified that when she hired Dubose, she told her that she had been discharged from medical treatment. Later, it became apparent that she was still under the care of a chiropractor, Dr. Henry Fitch.
Dr. Aida Blasini, Dubose’s treating physician and internist, testified that she currently is in a great deal of discomfort in the left shoulder, arm and hand. Dubose is on various medications for her pain and she receives intravenous drips for inflammation from Dr. Blasini. Dr. Blasini noted that a recurrence of TOS was possible. Dr. Balasini related Dubose’s pain to her work-related incidents in October and November, based on her statements about the incidents. However, subsequent to the deposition of Dr. Blasini, tests were conducted that ruled out a recurrence of TOS and any other nerve related disease or impingement.
Dubose was seen by Dr. Gordon Nutik, an orthopedic surgeon, in April and June of 2002, and by Dr. Richard Meyer, Jr., an orthopedic surgeon, in July and October of 2002 and May and July of 2003. Dr. Nutik diagnosed her with possible soft tissue strains around the neck and left shoulder, but based on her history, felt the injuries involved only minor trauma. Dubose underwent magnetic resonance imaging (MRI) of the upper extremity area and head, with negative results. After reviewing the results of MRI scans of the cervical spine and left shoulder and negative results from electromyography (EMG) testing, he reported that there is no evidence for any notable objective clinical findings to indicate underlying problems related to the neck or left shoulder. He concluded that, at the most, she suffered soft tissue injuries in the incidents. Dr. Meyer later diagnosed her with cervical strain and cu-bital tunnel syndrome related to the | ^accidents at work. However, nerve conduction studies by Dr. Maria Palmer and Dr. Richard Palmer ruled out cubital tunnel syndrome. To date of trial, no cause for the continuing pain had been determined.
The evidence shows that Dubose also suffers from fibromyalgia that pre-existed her employment with Cenacle. Fibro-myalgia is an incurable chronic pain disease recently recognized by the medical field as a true physical illness. She was diagnosed with this condition by Dr. Warren Gottsegen following her surgeries in 1998. Dr. Blasini agrees with this diagnosis. While there are varying opinions on the etiology of fibromyalgia, Dr. Balasini noted that mental stress or physical trauma may be a cause. Dubose has also been diagnosed with post traumatic stress syndrome, allegedly caused by the events at the workplace.
Dubose’s pre-employment medical records show that, following her two surgeries for TOS in 1998, she continued to be symptomatic in her left shoulder, left arm and hand. She was treated by Dr. Edna Doyl, a physiatrist, and tested and treated by neurologists, Dr. Mossadiq Jaffri, Dr. Maria Palmer and Dr. Richard Palmer. *415 She was provided physical therapy at times and was regularly receiving chiropractic treatments from Dr. Fitch. Dr. Blasini also treated her during this time. In addition, the evidence shows that after the automobile accident in February of 2002, Dubose claimed injuries to the same areas that she said she hurt at work. Despite this evidence, she insisted at trial that the injuries from the alleged work accidents were different from the injuries from the pre-employment 1996 accident and the post-employment 2002 automobile accident. However, she reluctantly admitted at trial that she made a personal injury claim for the same type of injuries from the accident in 2002.
We do not doubt that Dubose has pain in her shoulder, arm and hand area. However, her medical records prior to and after her employment with Cenacle In show that her complaints have not changed in any significant manner. She suffered chronic problems with her left shoulder, arm and hand. In her testimony, Dubose stated that the two work incidents did not aggravate those conditions. Instead, she insisted that the pain was new. The medical records do not support that claim. Thus, her attempt to differentiate pain, allegedly caused from the work-related incidents from the chronic 1996 and 2002 accidents, is neither persuasive nor credible. Du-bose’s credibility was further impeached by her failure to disclose the 2001 automobile accident that occurred four months before she was hired and the 2002 accident that occurred two months after her termination, when she gave her statement in May of 2002 to Keith Catha, the Summit field adjuster. In that statement, she denied several times that she had any other automobile accidents after the one in 1996. She finally disclosed the automobile accidents in her deposition. Dubose blamed her lapse of memory on the medications which she was taking at the time, which included medications that cause sleepiness. However, we note that the February 2002 automobile accident occurred only a few months before the statement was taken.
Considering the minor nature of the work-related incidents, the pre-employment and post-employment medical records, and Dubose’s lack of credibility in her testimony, we conclude that the workers’ compensation judge was not manifestly erroneous in finding that Dubose failed to show that her medical condition was caused by the two incidents.
FORFEITURE OF BENEFITS AND PENALTIES
Based on our conclusions that Dubose failed to prove a compensable injury, we pretermit the issue of whether she violated the statute. For the same reason, we affirm the denial of her claim for penalties and attorneys’ fees.
|1gDECREE
Accordingly, the judgment of the workers’ compensation judge is hereby affirmed. Costs of the appeal are to be paid by Dubose.
AFFIRMED.

. The date of the alleged first injury was not definitely proven, but was around October 22, 2001. Both Sister Pafco and Dubose thought that Dubose went out of town from October 12 — 17, 2001. Sister Pafco said Dubose was also off on the 18th and the following Monday for a doctor's appointment. However, according to the 2001 calendar, October 18, 2001 was a Thursday and the following Monday was October 22, 2001, the alleged date of the first injury.