WALTER J. ROTHSCHILD, Judge.
^Defendant, Fulton Duplessy, Jr., appeals the trial court’s May 17, 2011 judgment awarding sole custody of the minor child, Jake Duplessy, to plaintiff, Clifford Duplessy. For the following reasons, we affirm the award of sole custody to Clifford, and we remand for the trial court to determine if Fulton is entitled to visitation.

*211
FACTS AND PROCEDURAL HISTORY

This case involving a custody dispute between a parent and a non-parent arises from a unique set of facts and circumstances. Plaintiff, Clifford Duplessy, was one or two years old when his mother, Linda, married defendant, Fulton Duples-sy. Clifford refers to Fulton as his stepfather, though the testimony revealed that Fulton adopted Clifford when he was a child.
The minor child at issue, Jake Duplessy, was born on July 22, 1996. According to Clifford, when Jake was three months old, he received a call from his cousin, who is Jake’s biological father, indicating that he could not care for Jake [¡¡because he was being arrested. He asked Clifford to take care of the child. Clifford testified that he and his wife at the time, Sharon Duplessy, agreed to take Jake into their home and care for him. They originally believed that they would be caring for Jake for 30 to 90 days, but he ended up living with them for at least the first four years of his life.
In approximately 2001, Linda and Fulton legally adopted Jake. According to Clifford, he asked his mother to adopt Jake because he was in legal trouble, and he was also going through an acrimonious divorce. He maintains that he continued to provide for Jake and has acted as his father for most of his life. It is undisputed that Jake refers to Clifford as “Dad” and Fulton as “Pawpaw.” He has always referred to Linda as “Mawmaw.”
In his brief on appeal, Clifford contends that Jake lived with him from 1996 until July 2009, except for a period of time in 2006. Fulton disputes this and contends that Jake lived with him and Linda from the time he was adopted until Linda filed for divorce in May 2007. When Linda filed for divorce, Fulton asserts that Clifford moved in with Linda and Jake. Linda became sick and eventually passed away in May 2009. Jake lived with Clifford after Linda’s death until July 2009 when Fulton picked Jake up from his last day of summer school and refused to return him to Clifford’s home. According to Fulton, he allowed Jake to live with Clifford while he finished summer school, because Linda asked him to do so prior to her death. He indicated that he always intended for Jake to live with him when summer school was completed.
On July 15, 2009, Clifford filed a Petition for Custody against Fulton in the 24th Judicial District Court, seeking sole custody of Jake. The matter came before the court for trial on April 8 and 20, 2011. At the conclusion of trial, the trial court granted the parties additional time to submit memoranda. Thereafter, on May 17, |42011, the trial judge rendered a judgment awarding sole custody of Jake to Clifford, finding that awarding sole custody to Fulton would result in substantial harm to the minor child and that sole custody to Clifford was in the child’s best interest. Fulton appeals this judgment.

LAW AND DISCUSSION

In his first assignment of error, Fulton asserts that the trial court committed manifest error when it qualified Terri Campes-ta as an expert in clinical psychology, and marriage, child, and family counseling. He argues that Ms. Campesta does not possess the knowledge required in evaluating a custody dispute between a parent and a non-parent, because she did not use the appropriate standard when conducting her custody evaluation. Ms. Campesta testified that she used the “best interest of the child” standard in her evaluation, rather than the “substantial harm” standard which is used when there is a custody issue between a parent and a non-parent.
*212 A trial judge is vested with wide discretion in determining the competence of an expert witness. McFall v. Armstrong, 10-1041, p. 9 (La.App. 5 Cir. 9/13/11), 75 So.3d 30, 37. The competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge. Id. Rulings on the qualifications of expert witnesses will not be disturbed in the absence of manifest error. Jefferson v. Jefferson, 06-301, p. 8 (La.App. 5 Cir. 10/31/06), 946 So.2d 191, 195.
LSA-C.E. art. 702 governs the admissibility of expert testimony and provides as follows:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
iJn the present case, Ms. Campes-ta testified that she has a masters degree in clinical psychology, with an emphasis on marriage, family, and child counseling. She also stated that she is a licensed professional counselor and a licensed marriage and family therapist. She further noted that she has previously testified as an expert and that the trial court appointed her as an expert in this case.
The record before us shows that Ms. Campesta was qualified and properly accepted as an expert in clinical psychology, and marriage, child, and family counseling. Although Ms. Campesta did not use the “substantial harm” standard while evaluating the custody issues, it is the trial court that has the duty to apply the appropriate standard and make a determination of custody. Further, the best interest of the child is certainly relevant to the ultimate custody decision, even though the trial court must also find that substantial harm would result if custody is awarded to the parent.
Ms. Campesta interviewed several witnesses and provided a thorough evaluation to the trial court in which she recommended that Fulton and Clifford share joint custody of Jake. The trial judge was entitled to consider Ms. Campesta’s observations and evaluation and to give them the weight he deemed appropriate when determining the custody issue. Considering the testimony and evidence, we find no error in the trial court’s decision to qualify Ms. Campesta as an expert, and this assignment of error is without merit.
In his second assignment of error, Fulton argues that the trial court committed manifest error when it failed to recognize his constitutional rights as a parent and when it inaccurately applied Louisiana law for determining custody between a parent and a non-parent. He asserts that, as Jake’s father, he is constitutionally allowed to make decisions regarding his son’s upbringing, |f,including whether Jake goes to a doctor or dentist, whether Jake attends church, and whether Jake plays sports or participates in activities.
LSA-C.C. art. 133 provides:
If an award of joint custody or of sole custody to either parent would result in substantial harm to the child, the court shall award custody to another person with whom the child has been living in a wholesome and stable environment, or otherwise to any other person able to provide an adequate and stable environment.
In a conflict between a parent and a non-parent, the parent enjoys the paramount right to custody of a child and may be deprived of such right only for compelling reasons. Whitman v. Williams, 08-1133, p. 2 (La.App. 3 Cir. *213 2/4/09), 6 So.3d 852, 853; Martin v. Dupont, 32,490, p. 6 (La.App. 2 Cir. 12/8/99), 748 So.2d 574, 578. The test to determine whether to deprive a legal parent of custody is a dual-pronged test: first, the trial court must determine that an award of custody to the parent would cause substantial harm to the child; if so, then the courts look at the “best interest of the child” factors to determine if an award of custody to the non-parent is required to serve the best interest of the child. Black v. Simms, 08-1465, p. 4 (La.App. 3 Cir. 6/10/09), 12 So.3d 1140, 1143. A judgment awarding a non-parent custody of the child must determine that the non-parent is able to provide a wholesome and stable environment for the best interest of the child. Jones v. Coleman, 44,543, p. 16 (La.App. 2 Cir. 7/15/09), 18 So.3d 153, 163.
A court of appeal may not set aside a trial court’s findings of fact in the absence of manifest error or unless they are clearly wrong. Allerton v. Broussard, 10-2071, p. 3 (La.12/10/10), 50 So.3d 145, 146-147; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and | inferences are as reasonable. Stobart v. State through Dept. of Transp. And Development, 617 So.2d 880, 882 (La.1993); Cenacle Retreat House v. Dubose, 04-571, p. 4 (La.App. 5 Cir. 11/30/04), 888 So.2d 409, 411, writ denied, 05-157 (La.3/24/05), 896 So.2d 1040. If there are two permissible views of the evidence, a fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Id.
In the present case, the court-appointed expert, Terri Campesta, testified that while performing the custody evaluation, she interviewed Jake with each of the parties, and also interviewed several other individuals. Based on her observations, Ms. Campesta found that Jake appeared to be more attached to Clifford than to Fulton. She testified that Clifford’s bond with Jake is positive, warm, and respectful of the child’s interests. She stated that Fulton’s bond with Jake is more formal and possessive, noting that Fulton stated, “he’s mine” when referring to Jake. During the interview with Fulton and Jake, Ms. Campesta noted that they sat on opposite ends of the sofa, had no eye contact, had no spontaneous conversation, Jake’s posture was rigid, and Fulton spoke to Jake in a commanding way. During the interview with Clifford and Jake, the evaluator noted that they sat next to each other, there was spontaneous conversation and eye contact, and they laughed, joked, hugged, and clearly had a bond between them.
Ms. Campesta noted that Jake went to church weekly when he lived with Clifford, but he has not gone to church while living with Fulton. She also noted that Jake had not seen a doctor or dentist since moving in with Fulton in July 2009. In her opinion, being cut off from Linda’s side of the family isolates Jake and does not model good relationship skills, which certainly impacts him and can potentially impact him in later life. Ms. Campesta opined that Clifford would allow Jake more access to his extended family and she noted that Fulton stated that he did not Rbelieve he could co-parent with Clifford. She also testified that being cut off from sports can cause harm to Jake’s psychological well-being, because it can give him the sense that his opinions, wishes, and feelings are not important or prioritized.
Ms. Campesta recommended that Jake primarily reside with Clifford, because the cumulative effect of what is going on at Fulton’s home could have a destructive *214 impact. She stated that if Fulton were to have sole custody of Jake, Jake would not likely have access to Linda’s side of the family and that he would be socially and emotionally isolated. She also opined that Jake could suffer substantial harm if sole custody to Fulton under the current circumstances was awarded.
Clifford Duplessy testified that when Jake was an infant, Clifford’s step-cousin, who is Jake’s biological father, asked him to pick up Jake because he was being arrested and would not be able to care for him. He stated that he took care of Jake for the first four years of his life. He testified that in 2001 or 2002, he asked Linda to adopt Jake because he was facing legal issues and he wanted Jake to have a stable life. However, he contends that he still provided for Jake and supported him. He stated that Jake has called him “dad” from a very young age, despite being adopted by Linda and Fulton. He testified that Fulton’s relationship with Jake throughout his life has been “very minimal.” He further stated that Jake was very involved in sports and other activities when he lived with him. Clifford testified that he would bring Jake to church, to school, and to other activities if he were to have custody. He states that he loves Jake and wants to help him succeed in life.
Clifford believes that Jake is scared of Fulton, and he claims that Fulton abused Clifford as a child. However, he testified that he would not have a problem | peeping Fulton informed about Jake and would try to get along with Fulton if it made things easier for Jake.
The minor child, Jake Duplessy, testified that at the time of trial, he was 14 years old and in ninth grade. He stated that he lives with Pawpaw (Fulton), Michael (Fulton’ son), Brianna (Michael’s daughter), Gabrielle (Michael’s daughter), Gabrielle’s nine-month old son, and Billy Dewent (a family friend). He testified that his relationship with Fulton was “all right” but not the best. He asserted that he and Fulton do not talk much and Fulton does not allow him to talk to Clifford. Jake stated that when he moved in with Fulton, he was no longer able to play sports because he did not have a ride home. He testified that there was not much food in the house when he first moved in with Fulton, but there is enough food now. He testified that he wants to live with Cliff, because he would not be as “stressed.” He stated that Fulton does not allow him to go anywhere, except to the store with Fulton or places with Billy, because he thinks Jake will sneak off with his “dad” somewhere.
Jake testified that he feels pressured and stressed with Fulton and that they do not really have a good relationship. He stated that he has a better relationship with Clifford, has fun with Clifford, and they fish, play basketball, and go on vacations together. He stated that even when Linda was alive, Clifford acted as his father and Fulton was his “Pawpaw.” He testified that he refers to Clifford’s ex-wife, with whom Clifford has reconciled, as “Mom,” and he misses his “sister,” who is Clifford’s daughter.
Fulton Duplessy testified that he is biologically Jake’s great-uncle, because Jake is the biological son of his nephew. He stated that he married Linda when Clifford was two years old and although Linda had filed for divorce in 2007, he asserts that they reconciled before her death. He admits that Clifford had | ^temporary custody of Jake when he was an infant until he was four years old, but he contends that Jake lived with Fulton and Linda from the time they adopted him until Linda filed for divorce, at which time he was awarded joint custody.
Fulton testified that he is concerned about Jake’s relationship with Clifford, be *215 cause he is bad influence on Jake, an alcoholic and drug user, and tells Jake bad things about Fulton and Michael. He stated that he initially took Jake out of sports because of his poor grades, but Jake receives good grades now. He denied that Jake had to quit his school’s baseball team due to lack of transportation and claims that Jake quit because he would not be playing since he was a freshman on the varsity team. Fulton believes that his actions are in Jake’s best interest and that it is harmful for Jake to be around Clifford. He also asserts that the claims of insufficient food in his house are false, as are Clifford’s claims that he abused him as a child. He stated that he has never sent Jake to school without breakfast, never disciplined him with food, and never made him kneel in a corner, as alleged by Clifford.
Fulton testified that he is retired and he receives $500 in Social Security benefits for himself and about $300 for Jake, as well as food stamps, but his house is paid for and he does not have any problem providing food, clothing, or other necessities for Jake. He asserts that he spends time with Jake and occasionally plays basketball with him, and he has no problems with Jake, except when Jake is around Clifford. He admitted that Jake has not been to a dentist in the past two years, but he stated that he will take Jake to the dentist.
Jennifer Turnage testified that she is a juvenile detective for the St. Bernard Sheriffs Office. In August 2009, Clifford came to see her about Jake’s well-being while at Fulton’s house. Detective Tur-nage spoke to Jake at his school and he indicated to her that he had a limited amount of food, with no - breakfast provided. |nHe also indicated that Fulton controlled when, what, and how much he ate, and that he would get punished if he ate without permission. Jake also told her that he went fishing and on vacation when he lived with Cliff, but he was not allowed to play sports while at Fulton’s house and he shared a room in the garage with a mattress. He also stated that he had to kneel in the corner for several hours at times when he was punished.
In his reasons for judgment, the trial judge found that the testimony revealed that Fulton’s home was not a loving and welcoming one. He noted that Jake’s food intake was controlled and that he was sometimes punished for eating without permission. He also noted that Jake had not seen a doctor or dentist since moving in with Fulton and had not been to church, which had previously been a weekly event. He also noted that Jake was very active in sports until he moved in with Fulton, but was no longer a participant in any sports team. The trial judge found it “most concerning” that Jake was forbidden to have any contact with Clifford, and was rarely allowed to attend functions or events due to Fulton’s fear that he may encounter Clifford. He noted that Jake testified that he prefers to live with Clifford and that Fulton does not engage in activities with him or speak to him often. He also noted that Clifford was very involved as a parent and had previously coached Jake’s baseball team, played sports with Jake, took him fishing and on vacations.
The trial judge further noted that Ms. Campesta observed the spontaneous conversations between the Jake and Clifford and noted their bond, and that Fulton spoke to Jake in a commanding manner, they made no eye contact with each other, and had no spontaneous conversation. He also noted that Ms. Campesta was concerned that Fulton’s insistence on cutting Jake off from family members with whom he had been close could cause social iso *216 lation and a negative impact on his future relationships.
112The trial judge concluded that Clifford had met his burden of proof and found by clear and convincing evidence that sole custody to Fulton would result in substantial harm to Jake. He also found that it is in the best interest of Jake that sole custody be awarded to Clifford, who is able to provide an adequate and stable environment for the child.
It is well established that each child custody case must be viewed in light of its own particular set of facts and circumstances. McCormic v. Rider, 09-2584, p. 3 (La.2/12/10), 27 So.3d 277, 279. The instant case presents a unique set of facts and circumstances. The minor child, Jake, refers to Clifford as “Dad” and Fulton, his adoptive father, as “Pawpaw.” For several years of his life, Jake lived with Clifford and not with Fulton. The record reveals that Jake will be 16 years old this year and he prefers to live with Clifford. The evidence also shows that at the time of trial, the relationship between Clifford and Fulton was stronger than the relationship between Fulton and Jake, and the record supports the trial judge’s determination that Fulton’s home was not welcoming or loving. The testimony also supports the trial judge’s finding that Jake’s food intake was limited at some point, and that Fulton isolated Jake from social activities and forbade him from communicating with his extended family. The record also showed that Jake previously enjoyed attending church, but did not regularly attend while living with Fulton. It is also undisputed that Jake had not seen a doctor or dentist while living with Fulton and that he was no longer participating in sports, though he had previously been very active in sports. We note that Ms. Campesta opined that the cumulative effect of being cut off from family, sports, and religion, as well as a lack of transportation, would inflict substantial harm on Jake if it were to continue.
Based on the entire record before us, we find that under the peculiar facts of this case, sole custody was properly awarded to the legal non-parent, Clifford 11sDuplessy. We find no error in the trial court’s finding that substantial harm would result if sole custody were awarded to Fulton. We further find no error in the trial judge’s determination that it is in Jake’s best interest for sole custody be awarded to Clifford and that Clifford is able to provide a wholesome and stable environment for Jake. Accordingly, we affirm the trial court’s award of sole custody to Clifford.
In his third assignment of error, Fulton contends that the trial court committed manifest error by not providing for any visitation between Fulton and Jake. He notes that the trial court’s judgment did not mention visitation for Fulton, but it also did not state any reason why he should not have any visitation with Jake.
LSA-C.C. art. 136(A) provides that a parent who is not granted custody or joint custody is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. The trial court has inherent power to determine a child’s best interest and to tailor custody orders, including visitation, in a manner that minimizes risk of harm to the child. Oglesby v. Oglesby, 25,974, p. 6 (La.App. 2 Cir. 8/17/94), 641 So.2d 1027, 1031.
In the May 17, 2011 judgment awarding sole custody of Jake to Clifford, the trial judge did not award any visitation to Fulton or even address the issue of visitation. Accordingly, we remand this case to the trial court to determine if visitation with Fulton is in Jake’s best interest and, if so, to set forth a visitation schedule.

*217
DECREE

For the foregoing reasons, we affirm the trial court’s May 17, 2011 judgment awarding sole custody of Jake Duplessy to plaintiff, Clifford Duplessy. ¡14However, we remand to the trial court for a determination of whether or not Fulton Duplessy is entitled to visitation and to schedule such visitation, if appropriate.

AFFIRMED; REMANDED WITH INSTRUCTIONS.