STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**24-164**


PAUL MEDLEY

VERSUS

BENNETT TIMBER COMPANY, ET AL


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - DISTRICT 3
PARISH OF CALCASIEU, NO. 22-05376
MELISSA ST. MARY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**WILBUR L. STILES**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.


**AFFIRMED.**

**Kevin L. Camel**
**Cox, Cox, Filo, Camel, Wilson & Brown, LLC**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR CLAIMANT/APPELLANT:**
    **Paul Medley**

**Jeremy N. Morrow**
**Kelsi Flores**
**NeunerPate**
**One Petroleum Center, Suite 200**
**1001 West Pinhook Road**
**Lafayette, LA 70503**
**(337) 237-7000**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Bennett Timber Company and The Gray Insurance Company**

**STILES, Judge.**

The workers' compensation judge found that Claimant Paul Medley willfully made false statements or misrepresentations for the purpose of obtaining workers' compensation benefits, in violation of La.R.S. 23:1208, and therefore, pursuant to La.R.S. 23:1208(E), forfeited his right to compensation benefits. Claimant appeals. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

Claimant was injured on February 23, 2019, when he fell from a logging skidder and suffered injuries to his neck and back while in the course and scope of his employment as a logger with Defendant Bennett Timber Company. He first reported the accident to his supervisor on March 19, 2019, and sought medical attention at the emergency room of Ochsner LSU Health Shreveport on March 30, 2019. Defendant, The Gray Insurance Company, the workers' compensation insurer for Bennet Timber, initiated indemnity benefits for Claimant on April 11, 2019. On August 23, 2019, approximately six months after the accident, Claimant underwent a seven-level decompression and fusion of his thoracic spine from T4 to T12. In the year following the surgery, he received conservative treatment, including physical therapy, epidural steroid injections, and nerve root block injections. However, he continued to complain of back and leg pain.

Dr. Manish Singh examined Claimant on December 18, 2020, and issued a Second Medical Opinion (SMO) as to his condition. In his report, Dr. Singh opined that Claimant had reached maximum medical improvement (MMI) and that he may be able to go back to sedentary work. Dr. Singh also recommended a Functional Capacity Evaluation (FCE). On December 13, 2021, Dr. Singh provided an addendum to his December 18, 2020 SMO after reviewing Claimant's updated

medical records. In his addendum, Dr. Singh noted that his previous recommendations as to Claimant's thoracic spine and MMI remained the same. He further noted that Claimant's MRI showed some degenerative lumbar changes which were not related to his work injury and thus did not fall under workers' compensation.

Dr. Philip Utter, the doctor who performed Claimant's surgery, had originally anticipated that Claimant would reach MMI one year from the date of surgery. However, during a follow-up examination on March 17, 2022, Dr. Utter noted that Claimant felt his pain was getting worse and that he occasionally fell. Dr. Utter therefore opined that Claimant's disability remained moderate-to-severe and he was unable to work.

On April 8, 2022, Dr. Eric Oberlander performed an Independent Medical Examination (IME) on Claimant. Dr. Oberlander opined that Claimant had reached MMI from his injury, that an FCE would be appropriate, and that Claimant would likely be able to perform sedentary work. He further stated, "He has received an appropriate amount of conservative treatment and [I] do not feel any further treatment is needed for his cervical or lumbar spine."

Pursuant to Dr. Oberlander's IME report, Claimant's benefits were modified from temporary total disability (TTD) to supplemental earnings benefits (SEB), effective April 8, 2022. In addition, three 1010 Requests for Authorization submitted by Dr. Utter seeking updated MRIs and a pain management consultation were denied based on Dr. Oberlander's IME report. Claimant then filed a 1008 Disputed Claim for Compensation on October 17, 2022.

An FCE was scheduled for August 1, 2023, but cancelled the night before by Claimant who claimed that one of his children was sick. The FCE was then

rescheduled and performed on August 17, 2023 by Christopher Hoffpauir, PT, DPT at Rosewood Rehabilitation. The following was noted in the FCE report:

> Prior to beginning the evaluation, throughout the majority of the evaluation, and upon leaving after the evaluation, Mr. Medley ambulated with the use of a long walking stick, demonstrating a slow cadence, with decreased left single leg stance time. He indicated that he uses the walking stick when he is unsure of how far he will be walking because he has experienced falls on a weekly basis. He was able to safely perform carrying without the use of the walking stick demonstrating similar gait mechanics to those demonstrated during the formal walking test. Mr. Medley reported lumbar pain, thoracic pain, and bilateral leg pain prior to beginning any portion of the evaluation. He reported increased pain levels during [a] majority of functional tests completed, including isometric lifting, dynamic lifting, carrying, walking, bending, crouching, and kneeling. He also reported an increase in back pain during hand dexterity tests due to prolonged standing required for these tests. Mr. Medley was compliant with the majority of tests asked of him, with the exception of stair climbing, which he declined due to feeling unsafe negotiating stairs because of reported leg fatigue after completing numerous other tests prior.

As with the SMO and the IME, the FCE report found that Claimant could perform sedentary work, at a minimum.

On August 1, 2023, surveillance footage was taken of Claimant by a licensed private investigator, Jason Truax, between the hours of 11:10 a.m. and 4:02 p.m., a five-hour period. The surveillance footage showed Claimant driving around town and running various errands by himself without his walking stick. Claimant is also seen carrying a gallon-sized jug of liquid and a bag containing other bottles in his left hand and then lifting both the jug and the bag over his head, with his left hand, to place them in the toolbox in the back of his pickup truck.

Surveillance footage was again taken of Claimant by another licensed private investigator, Jody Clavier, on August 17, 2023, the day he attended the FCE at Rosewood Rehabilitation in Lafayette. Claimant is seen on the surveillance footage entering and exiting the facility, walking slowly and using his walking stick. The

FCE lasted from 7:30 a.m. until 12:00 p.m., four and a half hours. After Claimant and his family left the FCE, Claimant is seen on the footage driving his pickup truck from Lafayette to a Chinese restaurant in Opelousas. It is noteworthy that Claimant walked to and from the restaurant without his walking stick and carried his young son in his left arm into the restaurant. Claimant is also seen on the footage stepping up and down a curb in the parking lot of the restaurant without any aid or hesitation. The footage then shows Claimant driving the pickup truck back to Lafayette to the office of an allergy doctor with whom his son had an appointment. Claimant is again seen carrying his youngest son into the doctor's office in his left arm. After the appointment with the allergy doctor, the footage shows Claimant and his family getting back into the pickup truck, again with Claimant driving, and traveling back to their home in Merryville. The surveillance footage ends at 6:56 p.m. with the pickup truck driving down the road that leads to Claimant's home. At no point after Claimant left Rosewood Rehabilitation is he shown on surveillance footage using his walking stick.

Defendants deposed Claimant on September 6, 2023. On September 12, 2023, Defendants suspended Claimant's indemnity and medical benefits, effective September 14, 2023, claiming that he had committed fraud. They then filed a Reconventional Demand on September 18, 2023, alleging that Claimant had willfully made false statements for the purpose of obtaining workers' compensation benefits and that he had therefore forfeited any right to compensation pursuant to La.R.S. 23:1208.[1] Defendants based this allegation on what they perceived to be

---

[1] Louisiana Revised Statutes 23:1208 provides:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

severe contradictions between Claimant's deposition testimony and the surveillance footage.

This matter came before the workers' compensation judge (WCJ) on December 21, 2023, for a trial on the merits. After taking the matter under advisement, the WCJ issued a Judgment on January 19, 2024, finding that Defendants showed by a preponderance of the evidence that Claimant willfully made false statements or misrepresentations for the purpose of obtaining workers' compensation benefits, in violation of La.R.S. 23:1208, and that Claimant had, therefore, forfeited his right to compensation benefits under the Workers' Compensation Act.

The WCJ issued detailed Written Reasons for Judgment in conjunction with her judgment. At the start of her analysis, the WCJ stated:

> There are two permissible ways to view this claim. One view is that Claimant made inadvertent and/or inconsequential statements concerning his condition, in which case Claimant would still be entitled to all benefits due him under the [Workers' Compensation] Act. The alternative view is that Claimant went far beyond mere exaggerations or inadvertent statements and made misrepresentations regarding his condition such that he would not be entitled to continue receiving benefits. Based on the following reasons, the Court finds that Claimant made false statements, and that those statements were willfully made for the purpose of obtaining workers' compensation benefits.

After reviewing all of Claimant's statements to his doctors, his deposition testimony, the testimony presented at trial, and the surveillance footage, the WCJ first focused on the fact that Claimant was seen without his walking stick in the surveillance footage:

> First, and foremost, the surveillance days were extremely long days for a person in Claimant's purported condition to be without his

---

. . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation under this Chapter.

5

walking stick the entire time, and engaging in activities he previously testified he was either limited in doing, could not do without assistance, or could not do at all. It is simply not believable that Claimant would not have needed his walking stick at any point during either day of the surveillance based on Claimant's description of his condition – significant left side weakness, inability to carry heavy things with his left hand, potential to fall like a fainting goat at any time, etc. It is not solely that Claimant did not use his walking stick; rather, Claimant showed no signs of actually needing the walking stick as he went from errand to errand and place to place over the course of such long days.

The WCJ then turned to Claimant's assertion that he cannot drive long distances. While Claimant testified at his deposition that his wife did most of the driving and he had to switch off with her on long drives, on the date of the FCE, Claimant drove from Lafayette to Opelousas, back to Lafayette, and then to his residence in Merryville. Mr. Clavier, the private investigator, testified that Claimant and his wife did not take turns driving and did not stop for any breaks. The WCJ states in her written reasons, "Again, it is not solely that Claimant drove his vehicle; rather, there was no indication of the driving limitations Claimant previously testified to having."

The next issue addressed by the WCJ was Claimant's deposition testimony that he was unable to carry his young child. The August 17, 2023 surveillance footage shows Claimant not only carrying his son, but carrying him in his left arm. The WCJ noted that Claimant carried his son "quite a ways, unaided by any walking assistance, with no sign of difficulty[.]"

In her conclusion, the WCJ acknowledged that Claimant may feel "some lingering effects and pain from his work injury," but found that "it is a far cry from the picture Claimant attempted to paint of his condition, which went well beyond exaggeration, and some of which defies logic altogether." And while the WCJ had hoped Claimant's testimony at trial would explain the "severe contradictions" seen

6

in his deposition testimony and the surveillance footage, his "behavior and trial testimony fell short of that and caused this Court to strongly question Claimant's credibility." It was for these reasons that the WCJ found that Defendants "carried [their] burden to show that Claimant willfully made a false statement or representation for the purpose of obtaining workers' compensation benefits, thereby forfeiting future benefits."

Clamant has appealed the WCJ's judgment, asserting the following three assignments of error:

1. The OWC judge incorrectly found that the employer/carrier met their burden of proof that Paul Medley violated R.S. 23:1208 and forfeited his right to benefits because defendants failed to identify any actual misrepresentation and failed to prove that any purported misrepresentation was made for the purpose of obtaining benefits. Defendants failed to demonstrate how any alleged misrepresentation would have provided benefits to which Mr. Medley was not already entitled as a result of his physical restrictions caused by the work accident.

2. The OWC judge failed to make any finding that Paul Medley made a misrepresentation for the purpose of obtaining benefits. Defendants only alleged and the OWC judge only found that Mr. Medley had exaggerated his symptoms.

3. The OWC judge improperly considered Paul Medley's deposition testimony prior to trial and allowed cross-examination of Mr. Medley with regard to alleged prior inconsistent statements in violation of Code of Evidence Article 613.

Claimant is asking this court to reverse the judgment, reinstate his benefits retroactive to the date of termination, and award penalties and attorney fees.

## DISCUSSION

### *Standard of Review*

In *Resweber v. Haroil Constr. Co.*, 94-2708, p. 7 (La. 9/5/95), 660 So.2d 7, 12, the supreme court analyzed the "clear and unambiguous" language of La.R.S. 23:1208, finding that it "has no language limiting it to only certain types of false

statements[.]" "The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or misrepresentation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *Id.*

When fraud has been alleged under La.R.S. 23:1208, "[t]he determination by a WCJ as to whether a claimant has made a false statement, willfully, for the purpose of obtaining workers' compensation benefits is a finding of fact, and is, therefore, subject to the manifest error standard of review." *Jim Walter Homes, Inc. v. Guilbeau*, 05-1473, p. 5 (La.App. 3 Cir. 6/21/06), 934 So.2d 239, 243. Thus, upon review, this court may not reverse the WCJ's decision unless there is no reasonable factual basis for such a finding in the record. Additionally, the WCJ in this matter specifically questioned Claimant's credibility.

> When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of variations in demeanor and the tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

Claimant argues that this court should apply a *de novo* standard of review to this appeal because the WCJ's consideration of Claimant's deposition transcript and surveillance footage prior to them being admitted as evidence at trial interdicted the fact-finding process. "[W]hen legal error interdicts the fact-finding process in a workers' compensation case, the manifest error or clearly wrong standard of review no longer applies and *de novo* review of the matter is required." *Gaines v. Home Care Sols., LLC*, 15-895, p. 9 (La.App. 4 Cir. 4/6/16), 192 So.3d 794, 801 (citing

*Marti v. City of New Orleans*, 12-1514 (La.App. 4 Cir. 4/10/13), 115 So.3d 541), *writ denied*, 16-847 (La. 6/17/16), 192 So.3d 765.

Defendants maintain, however, that the manifest error standard of review should be applied to this appeal. "A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial." *Evans v. Lungrin*, 97-541, p. 7 (La. 2/6/98), 708 So.2d 731, 735. While Claimant has alleged that the WCJ committed a legal error by considering evidence before it had been properly admitted as evidence, he has cited no legal authority in support of this argument. Nor has he shown how he was supposedly prejudiced by this alleged legal error. Thus, Defendants argue that as no legal error by the WCJ has been shown, the *de novo* standard of review does not apply, and this court must review the WCJ's factual findings under the manifest error standard of review.

We do not find that the WCJ committed any legal error in this matter. Thus, we apply the manifest error standard of review in our review of this appeal.

### Violation of La.R.S. 23:1208 and Forfeiture of Compensation Benefits

Claimant contends that the WCJ incorrectly found that Defendants met their burden of proof that he violated La.R.S. 23:1208 and forfeited his right to benefits because Defendants failed to identify any actual, willful misrepresentation made by Claimant for the purpose of obtaining workers' compensation benefits. According to Claimant, Defendants have argued, and the WCJ found, that Claimant simply exaggerated his symptoms, which is not proof of fraud. While the claims adjuster, Brenda Guillot, testified at trial that she felt there were "inconsistencies" between Claimant's deposition testimony and the surveillance footage, Claimant argues that Ms. Guillot failed to identify any actual, specific statement made by him which could be considered a willful misrepresentation for the purpose of obtaining benefits.

Claimant further contends that Defendants must show that he made such willful misrepresentations for the purpose of obtaining additional workers' compensation benefits to which he was not already entitled. He argues in his brief that no one disputes he is entitled to indemnity benefits due to his work-related injury, and that in order to satisfy the requirements under La.R.S. 23:1208, Defendants must show he was seeking *additional* benefits by exaggerating his symptoms. Thus, without evidence and a finding that Claimant made a misrepresentation in order to obtain some specific benefit to which he was not otherwise entitled, Defendants are unable to meet their burden of proof and the WCJ erred in finding that Claimant committed fraud.

Defendants first address Claimant's argument that they failed to identify any specific misrepresentation made by him, asserting that Ms. Guillot identified numerous misrepresentations made by Claimant during his deposition which were directly contradicted by the surveillance footage. Defendants submit that they have not alleged that Claimant specifically misrepresented his ability to continue working as a logger, but instead that he misrepresented his overall physical condition and capabilities in an attempt to prolong his entitlement to benefits. In their brief, they list the specific misrepresentations they submit were identified by Ms. Guillot at trial: Claimant's ability to hold and carry his child; his ability to use his left arm; his ability to step on or off a curb without holding onto something for support; his claim that his left leg is his weakest leg; his ability to ambulate safely and normally without using his walking stick; his claim that he needs to hold onto a wall for support when walking without his walking stick; his claim that he stops to stretch every thirty minutes while driving or riding in a car; his ability to hold and/or carry things in his left hand; his ability to lift his left arm above his head; his ability to run long errands

10

without his wife's assistance; his ability to enter and exit his vehicle; and his claim that he always uses his walking stick unless he has something else to hold onto for support. Thus, according to Defendants, they have satisfied their burden by showing Claimant willfully made false statements or misrepresentations in an attempt to prolong his workers' compensation benefits.

Defendants next respond to Claimant's argument that they must establish that he made misrepresentations to obtain benefits to which he was not already otherwise entitled. While Claimant has cited numerous cases which he contends support his argument, Defendants argue that the courts have instead expressly disagreed with Claimant's position. As such, they are only required to show that Claimant made willful material misrepresentations for the sole purpose of obtaining *any* workers' compensation benefits, regardless of Claimant's entitlement to such benefits. In support of their argument, Defendants cite the supreme court's decision in *St. Bernard Parish Police Jury v. Duplessis*, 02-632, p. 9 (La. 12/4/02), 831 So.2d 955, 960 (emphasis added):

> As this court found in *Resweber*, [660 So.2d 7], LSA–R.S. 23:1208 is unambiguous. The Louisiana Legislature has made it clear: false statements that are willfully made for the purpose of obtaining workers' compensation benefits constitutes an attempt to defraud the workers' compensation system. Therefore, once it is determined that a claimant has willfully made a false statement for the purposes of receiving *any benefit or payment*, the plain language of the statute mandates that the "right to compensation benefits" under the Workers' Compensation Act are forfeited. Thus, the only remedy for a willful misrepresentation, made for the purposes of obtaining workers' compensation benefits, is found within the Workers' Compensation Act, and, therefore, cannot be abridged by this court.

Defendants maintain that, based on the evidence, it is undisputable that Claimant made willful misrepresentations for the sole purpose of prolonging, i.e. obtaining, his workers' compensation benefits. As such, he has violated the provisions of

La.R.S. 23:1208 and forfeited his right to compensation benefits under the Workers' Compensation Act.

As a preliminary matter, we find that the clear and unambiguous language of La.R.S. 23:1208(A) and the supporting jurisprudence require a showing that a claimant made false statements or representations for the purpose of obtaining *any* benefits provided under the Workers' Compensation Act. *See Resweber*, 660 So.2d 7; *Duplessis*, 831 So.2d 955. There is no merit to Claimant's contention that Defendants must show he was attempting to obtain benefits to which he was not already entitled.

We will now review the WCJ's decision that Defendants satisfied their burden of proof that Claimant violated the provisions of La.R.S. 23:1208. When considering the arguments and evidence presented to us in this appeal, we find the WCJ's written reasons of judgment to be especially enlightening. The WCJ gave particular attention to the witness testimony presented at the trial on the merits.

Brenda Guillot, the first witness to testify, was the adjuster assigned by The Gray Insurance Company to Claimant's case. With regard to any specific misrepresentations made by Claimant which contradicted his behavior in the surveillance videos, the WCJ noted the following:

> [Ms. Guillot] testified that after review of Claimant's deposition in light of the surveillance videos, it was her opinion that there was sufficient evidence to terminate Claimant's benefits based on fraud. Specifically, Ms. Guillot opined that Claimant severely exaggerated his disability during his deposition when he indicated that he could not walk without his walking stick, that he could not carry his child, that he could not go up and down curbs without his walking stick or holding onto something, that he has to stop every thirty minutes to stretch when he is driving or riding as a passenger, and that he could not use his left arm often or lift it above his shoulders. Ms. Guillot found these misrepresentations to be direct contradictions of what Claimant was shown doing in the surveillance videos.

We find that the trial transcript and evidence introduced at trial support these findings. And while Ms. Guillot described some of these instances as "exaggerations," the WCJ found that Claimant's statements went "well beyond exaggeration."

We especially note that the WCJ made it a point to state in her written reasons that she "found Ms. Guillot extremely credible":

> As the single adjuster to handle this claim, she was keenly familiar with every aspect, including specific dates, dating back to Claimant's first report of injury to present, without the use of any reference material. Ms. Guillot was very clear and direct with her responses; she was not confused or flustered by any questions; she did not require any refreshing of her memory; and her testimony remained consistent. She testified that she was aware of the severe penalty associated with a fraud claim and because of such, it was not a decision that was made lightly, but it was a decision that was warranted based on the evidence. It was clear through her testimony that she thoroughly studied Claimant's behavior in the surveillance video and carefully compared it to Claimant's deposition testimony. Ultimately, she concluded that Claimant was significantly less physically impaired than what he claimed to be, and that he testified falsely as to his limitations.

In contrast, the WCJ specifically found Claimant to not be very credible. She noted in her written reasons that Claimant testified he did not consider any statements contained in his deposition testimony to be a misrepresentation or a lie, that he had simply mixed up some dates, and that he did not exaggerate his symptoms. Yet, his behavior and demeanor at trial caused her to question his credibility:

> During the duration of trial, Claimant changed his position from sitting to standing nearly every thirty minutes or so. The precision with which the sitting and standing was done made it seem like more of an act than something done out of necessity, and became distracting over time. Claimant's non-verbal communication and his inability to answer some of the questions without long delays did not make a good impression and caused this Court to not find Claimant very credible.

The WCJ was particularly wary of Claimant's testimony that he falls often due to his muscles suddenly stiffening and likening these falls to a fainting goat.

"Claimant explained that if you startle a goat, its nerves causes [sic] its muscles to tense up and spasm so badly that it just falls over because it loses control over its lower bodily functions." And while he complained of falling often, the WCJ noted that there are no medical records indicating that he was treated for any falls post-surgery.

> Frankly, the Court finds this testimony inconceivable. It is difficult to rationalize that a well person could fall in such a manner on multiple occasions and never get injured. It is even more difficult to rationalize that someone of Claimant's stature who has had a 7-level fusion could do so and not require medical attention at least on one occasion, or a discussion of such falls with his doctors. Moreover, if such were true, the Court believes that Claimant would take special care not to forget his walking stick, and he certainly would not intentionally take a chance of going without his walking stuck knowing full well the imminent danger doing so might cause.

Finally, after considering all of Claimant's testimony, both at his deposition and at trial, as well as the surveillance footage, the WCJ found the following:

> Claimant's trial testimony in this case simply failed to refute, correct, clarify or even explain his deposition testimony in light of the surveillance video to the satisfaction of this Court. Claimant's trial testimony was inconsistent with his deposition testimony, all of which was contradicted by the surveillance.

The WCJ acknowledged in her conclusion that the penalty provided in La.R.S. 23:1208 is severe and that she "therefore did not arrive at this decision casually." We too acknowledge that the forfeiture of workers' compensation benefits is a harsh remedy, requiring the courts to strictly construe the statute. *See e.g., Johnson v. Lofton Staffing Servs., Inc.*, 21-761 (La.App. 3 Cir. 5/4/22), 339 So.3d 663, *writ denied*, 22-858 (La. 9/27/22), 347 So.3d 157. The WCJ laid out a very thorough and reasonable basis for finding that Defendants had satisfied all of the requirements of La.R.S. 23:1208. After reviewing the record, we find that the WCJ's decision is supported by the testimony and evidence presented at the trial of this matter. We

therefore find that the WCJ did not commit manifest error when holding that Defendants met their burden of proof by showing that Claimant willfully made false statements or misrepresentations for the purpose of obtaining workers' compensation benefits.

***Evidentiary Rulings by the WCJ***

Claimant's remaining assignment of error focuses on alleged improper evidentiary rulings made by the WCJ at trial.

In workers' compensation proceedings, the rules of evidence and procedure are more relaxed than in other court proceedings. Louisiana Revised Statutes 23:1317 provides, in pertinent part, "The workers' compensation judge shall not be bound by technical rules of evidence or procedure other than as herein provided, but all findings of fact must be based on competent evidence." The supreme court discussed the application of La.R.S. 23:1317 in *Chaisson v. Cajun Bag & Supply Co.*, 97-1225, p. 9-10 (La. 3/4/98), 708 So.2d 375, 381 (footnote omitted) (emphasis in original):

> LSA–R.S. 23:1317 mandates that the hearing officer's factual findings be based on "competent evidence." La.Rev.Stat. Ann. 23:1317(A) (West Supp. 1997). This legislative mandate is necessary because under the express language of LSA–R.S. 23:1317, workers' compensation hearing officers are "not bound by the technical rules of evidence." *Id.* In other words, the hearing officer has the discretion to admit evidence that would otherwise be inadmissible under the Louisiana Code of Evidence. This more relaxed standard for the admissibility of evidence is the general rule in proceedings before administrative agencies. McCormick on Evidence § 352 (4th ed.1992). The legislative requirement that a hearing officer's factual findings be based upon competent evidence is the safeguard that ensures that the factual findings are made on evidence that has some degree of reliability and trustworthiness, notwithstanding that the evidence might fall outside of the technical rules for admissibility. Therefore, when a reviewing court evaluates the factual findings of a hearing officer under the manifest error standard, it must determine whether the factual findings are reasonable *and supported by competent evidence in the record.* Although the Legislature has not defined "competent evidence," in

15

order to give the relaxed evidentiary standard in LSA–RS 23:1317 effect, it must not be defined so narrowly as to mean only evidence that would fall within the parameters of the Louisiana Code of Evidence. If the hearing officer's factual findings are reasonably supported by competent evidence, then the reviewing court must affirm them.

Claimant first argues that an employer is required to identify a specific statement that it claims to be a misrepresentation and generalizations are insufficient. According to Claimant, Defendants relied on generalized allegations that Claimant was exaggerating his symptoms instead of identifying a particular statement verbatim that was a material misrepresentation made for the purpose of obtaining benefits.

We find that Defendants did identify specific instances of misrepresentations made by Claimant, all of which were discussed by the WCJ in her written reasons for judgment, as noted above. The following are examples of specific misrepresentations identified by Defendants which were made by Claimant at his deposition for the purpose of obtaining benefits: his inability to walk without his walking stick due to frequent falls; his inability to carry things in his left hand, including his young son; and his inability to drive or ride in a car for long distances without taking a break to walk around. The surveillance videos specifically contradicted these claims. As such, since specific misrepresentations were identified by Defendants and supported by the evidence, we find that the WCJ did not commit manifest error in finding that Claimant made misrepresentations for the purpose of obtaining benefits.

Claimant next argues that, when impeaching a witness with prior inconsistent statements, the Code of Evidence requires the witness to be presented with the exact

16

statement and given an opportunity to admit or deny it. La.Code Evid. art. 613.[2] Claimant contends that when Defendants attempted to impeach him with his deposition testimony at trial, each question from his deposition that they sought to introduce as a prior inconsistent statement was markedly different than the question asked at trial. Thus, Claimant argues that he never actually contradicted himself because the questions asked of him at trial were not the same as those asked at the deposition. As a result, the WCJ should not have allowed Defendants to introduce the deposition testimony at trial because they failed to lay a proper foundation under La.Code Evid. art. 613, and the deposition testimony was inadmissible hearsay.

Defendants direct the court's attention to La.Code Civ.P. art. 1450(A)(1), which provides that "[a]ny deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness." They argue that nothing in La.Code Evid. art. 613 or La.Code Civ.P. art. 1450 requires that the same question be asked word for word; the law merely requires that the witness be asked about his deposition testimony and be given the opportunity to admit or deny it. And while Claimant may not have been asked the exact same questions, word for word, at trial as those at his deposition, Defendants maintain that he was asked "substantially similar questions."

A review of the trial transcript reveals that Claimant's attorney, Kevin Camel, objected numerous times during Claimant's cross-examination and impeachment by

---

[2] Louisiana Code of Evidence Article 613 provides:

> Except as the interests of justice otherwise require, extrinsic evidence of bias, interest, or corruption, prior inconsistent statements, conviction of crime, or defects of capacity is admissible after the proponent has first fairly directed the witness' attention to the statement, act, or matter alleged, and the witness has been given the opportunity to admit the fact and has failed distinctly to do so.

the defense. The main focus of Mr. Camel's objections was that defense counsel, Jeremy Morrow, was not using the same language in his questions during cross-examination as that used at the deposition. In addition, there were discussions as to whether Claimant was actually contradicting himself by using phrases such as "most of the time" instead of a simple affirmative answer. The WCJ acknowledged Mr. Camel's objections and his reasoning behind the objections before deciding that she would allow the deposition in as evidence, "and it is going to the weight of the overall evidence." Thus, the WCJ was made aware of the discrepancies between the questions and answers at trial and at the deposition.

As noted above, evidentiary rules are relaxed in workers' compensation hearings. *See* La.R.S. 23:1317 and *Chaisson*, 708 So.2d 375. Under the manifest error standard of review, we are required to "determine whether the [WCJ's] factual findings are reasonable *and supported by competent evidence in the record*." *Chaisson*, 708 So.2d at 381 (emphasis in original). The supreme court specified in *Chaisson* that a WCJ "has the discretion to admit hearsay evidence in worker's compensation proceedings[,]" and further held "that such evidence can qualify as 'competent evidence,' provided that the evidence has some degree of reliability and trustworthiness and is of the type that reasonable persons would rely upon." Claimant's deposition testimony was used by Defendants to impeach his testimony at trial, as allowed by La.Code Civ.P. art. 1450(A)(1). After considering Claimant's objections, the WCJ used her discretion to admit his deposition testimony into evidence and apply it to the overall weight of the evidence. We find that the deposition testimony was competent evidence and, as such, the WCJ did not commit manifest error in admitting it.

18

Claimant's final argument relates to whether the WCJ reviewed his deposition testimony and the surveillance videos prior to them being offered and admitted as evidence at trial. Defendants submitted Claimant's deposition testimony and the surveillance videos to the WCJ prior to trial, which Claimant believes influenced her later evidentiary rulings.

As noted by Defendants, there is nothing in the record to indicate that the WCJ reviewed any portion of Claimant's deposition testimony prior to trial. And as discussed above, we find that the WCJ properly used her discretion at trial to admit portions of the deposition transcript into evidence. During the questioning of witnesses at trial, there was some discussion of whether the surveillance videos should be shown. The WCJ responded that she had "already seen it." Mr. Camel acknowledged that the WCJ had already seen the videos and did not raise any objection at that time. Nor did he raise any objection to the videos being admitted into evidence.

We first find that Claimant has failed to show that the WCJ reviewed any portion of his deposition transcript prior to trial, and if she did review the transcript, how it may have influenced her findings against him. Next, we find that even though the WCJ admitted to viewing the surveillance videos prior to trial, Claimant did not raise any objection to either her viewing the videos or to the videos being admitted into evidence. Additionally, he has failed to show how the WCJ watching the videos prior to trial influenced her findings against him. For these reasons, we find that no error was committed by the WCJ.

**DECREE**

For the foregoing reasons, we affirm the judgment of the workers' compensation judge. Costs of this proceeding are assigned to Claimant/Appellant, Paul Medley.

**AFFIRMED.**